The **OFFICIAL UNSECURED CREDITORS' COMMITTEE OF GROSS COMMON CARRIER, INC., Plaintiff,**

v.

**CONSOLIDATED PAPERS, INC., Defendant.**

No. 93–C–541–S.

United States District Court, W.D. Wisconsin.

March 31, 1994.

John W. Bryant, Eames, Wilcox, Mastej, Bryant, Swift and Ridell, Detroit, MI, for plaintiff.

John Duncan Varda, DeWitt Porter, Madison, WI, for defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff, the Official Unsecured Creditors' Committee of Gross Common Carrier, Inc., commenced this action to recover alleged tariff undercharges from the defendant, Consolidated Papers, Inc. pursuant to the filed rate doctrine. Defendant challenges the applicability of the rates asserted by the plaintiff and has counterclaimed that those rates

are unreasonable. Jurisdiction is based upon 28 U.S.C. § 1331.

The matter is presently before the Court on defendant's motion to refer the matter to the Interstate Commerce Commission based upon its primary jurisdiction over the issues in the case.

## MEMORANDUM

Defendant advances three principal arguments in opposition to plaintiff's claims and asserts that each of the arguments raises issues which require reference to the Interstate Commerce Commission under the doctrine of primary jurisdiction. First, defendant argues that certain shipments for which plaintiff seeks recovery were contract rather than common carriage and are therefore not subject to filed tariffs. Second, defendant asserts that the single-line tariffs it paid and discounts it received were appropriate notwithstanding plaintiff's use of a connecting carrier without direction or authorization from defendant. Third, to the extent that the rates asserted by plaintiff are determined to be applicable, defendant argues that they are unreasonable.

Plaintiff opposes reference to the Interstate Commerce Commission, arguing that the legal issues raised by defendant's first two positions are readily resolvable by this Court without the needless waste of time that will result from Interstate Commerce Commission proceedings. Plaintiff further argues that defendant has failed to establish a *prima facie* case of rate unreasonableness which would justify reference.

*Primary Jurisdiction Standards*

Because there is some dispute concerning the appropriate standard for deferring consideration of the case under the doctrine of primary jurisdiction, the Court begins with a review of primary jurisdiction analysis. The following is a concise summary of the doctrine:

The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.... Pri-

mary jurisdiction ... applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. Western P.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The Seventh Circuit Court of Appeals recently identified the following three policy reasons for applying the doctrine of primary jurisdiction:

Initially, primary jurisdiction promotes consistency and uniformity, particularly where the development of the law is dependent to some degree upon administrative policy. Second, an administrative agency is uniquely qualified to resolve the complexities of certain areas which are outside the conventional experience of the court. Finally, primary jurisdiction serves judicial economy because the dispute may be decided within the agency, thus obviating the need for the courts to intervene.

*Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir.1991) (citations omitted). In determining whether to defer to agency consideration a court must consider whether these purposes will be aided by the application of the doctrine to the pending litigation. *Western Pacific*, 352 U.S. 64, 77 S.Ct. at 165.

Where the interpretation of an administrative agency's regulation is crucial to a district court's decision the Seventh Circuit Court of Appeals has gone so far as to say that it would be plain error not to defer under the doctrine of primary jurisdiction even if the parties had not raised the issue. *Johnson v. Artim Transp. System, Inc.*, 826 F.2d 538, 548 (7th Cir.1987).

Contrary to plaintiff's position neither the Supreme Court nor the Seventh Circuit Court of Appeals has placed great weight upon whether reference to the administrative agency will result in inefficiencies. Neither have they focused upon whether the district court is competent to resolve the issues pending before it. Indeed, if these were the

dispositive factors it can be supposed that the doctrine of primary jurisdiction would disappear since courts are rarely willing to concede incompetence and referral to administrative agencies almost never promotes efficiency.

Considering each of the issues raised by defendant it is apparent that the purposes of the primary jurisdiction doctrine will be furthered by deferring to the Interstate Commerce Commission and that such deferral is virtually compelled under the circumstances of this case.

*Common versus Contract Carriage*

There is no question that the issue of whether transportation is contract or common carriage has "been placed within the special competence" of the Interstate Commerce Commission. The authority of the Commission in this regard was expressly affirmed by Congress in its enactment of the Negotiated Rates Act of 1993. Sec. 8 of the Act provides as follows:

> If a motor carrier ... has authority to provide transportation as both a motor common carrier and a motor contract carrier and a dispute arises as to whether certain transportation is provided in its common carrier or contract carrier capacity and the parties are not able to resolve the dispute consensually, the Commission shall have jurisdiction to, and shall, resolve the dispute.

Two of the issues pursued by the defendant concern the distinction between "contract" and "common carriage." The first such issue concerns shipments which both parties believed were transported in plaintiff's contract carrier capacity. The shipments were billed and paid under the contractual rates. Since contract carriage is not subject to common carriage tariffs, both parties presumed that the contract rates were applicable. Plaintiff now seeks to recover the higher common carriage tariffs for these shipments because the shipments were interlined with another carrier. In support of its position plaintiff relies upon long-standing decisional law of the Commission which holds that contract carriers may not interline with other common carriers. *Holmes Contract Carrier Application,* 8 MCC 391, 393 (1938).

From this plaintiff argues that it must have been operating in its common carrier capacity for these shipments.

Defendant contends that this rule contains, or should contain, an exception for circumstances where the customer did not direct or consent to the use of an additional carrier in the transportation of the goods. Defendant points to the obvious potential for abuse if a carrier can solicit a shipper's business at a low contract rate and subsequently convert it to a higher common carriage rate by its own decision to interline with an additional common carrier. In effect, defendant seeks a favorable interpretation or modification of the ICC's own policy developed over time by its decisions.

Clearly such an issue should first be addressed by the Commission which established the rules through its decisions pursuant to its obligation to develop uniform law concerning the distinction between contract and common carriage. The need for uniformity in the application of the rule is apparent and can only be achieved by allowing the Interstate Commerce Commission to assume primary responsibility for the development of rules of law governing the distinction.

The second issue relating to the distinction between contract and common carriage concerns shipments which involve an ongoing contractual relationship between plaintiff and third-party carrier United Pacific Freight Services, Inc. It is defendant's position that this transportation was contract carrier service based upon the contractual arrangement between plaintiff and UPFS. Resolution of the dispute depends upon an interpretation of 49 U.S.C. § 10102(15)(B), which defines "motor contract carrier." More specifically, it depends upon a determination of the meaning of the term "person" within that section. The resolution of this potential ambiguity in the statute should first lie with the Interstate Commerce Commission which is charged with the development of a uniform law concerning the definition of a motor contract carrier.

*Single–Line Tariffs and Interlining*

The third issue raised by the defendant concerns shipments billed and paid pursuant

to single-line tariffs and discounts, but which shipments were actually interlined with a second carrier. Under ICC tariff rules local or single-line tariffs are inapplicable to transportation provided jointly by more than one carrier and joint rates must provide a list of all participating carriers or be made subject to a separate participating carrier's tariff. 49 C.F.R. §§ 1312.1(b)(9) and 1312.13(c). Since the participating carriers on the shipments at issue were not parties to the billed tariffs, plaintiff urges the Court to apply these regulations literally, compelling the defendant to pay higher joint rates rather than the single-line rate billed and paid.

Consistent with its position that carrier convenience interlining cannot be used to destroy the status of a shipment as contract carriage, defendant asserts that such interlining also cannot destroy the status of a shipment as governed by a local tariff which was relied upon by the shipper. Defendant again points out the potential abuse available to a carrier who solicits business on the basis of a local discounted tariff and subsequently interlines for its own convenience and for the purpose of forcing payment of a higher tariff.

Resolution of this issue requires consideration of tariff policy as well as the interpretation and application of the ICC's own regulations and is precisely the circumstance described in *Johnson v. Artim Transp. System* where nondeferral would be plain error. 826 F.2d at 548.

*Rate Reasonableness*

There is no dispute that a determination of rate reasonableness is and has long been within the special competence of the Interstate Commerce Commission. *Reiter v. Cooper,* —— U.S. ——, ——, 113 S.Ct. 1213, 1217, 122 L.Ed.2d 604 (1993); *Western Transp. Co. v. Wilson & Co.,* 682 F.2d 1227, 1232 (7th Cir.1982). The sole issue presented is whether the facts established by the defendant in support of its motion are sufficient to establish a genuine issue of rate unreasonableness and assure the Court that the counterclaim is not asserted merely for delay. *Milne Truck Lines, Inc. v. Makita U.S.A., Inc.,* 970 F.2d 564, 570 (9th Cir.1992).

The Court concludes that defendant has made the necessary threshold showing under appropriate standards for rate reasonableness. Standards for determining whether rates are reasonable are codified at 49 U.S.C. § 10701(e) as follows:

> The Commission shall authorize revenue levels that are adequate under honest, economical, and efficient management to cover total operating expenses, including the operation of leased equipment and depreciation, plus a reasonable profit. The standards and procedures adopted by the Commission under this subsection shall allow the carriers to achieve revenue levels that will provide a flow of net income, plus depreciation, adequate to support prudent capital outlays, assure the repayment of a reasonable level of debt, permit the raising of needed equity capital, attract and retain capital in amounts adequate to provide a sound motor carrier transportation system in the United States, and take into account reasonable estimated or foreseeable future costs.

The affidavit of Bruce Hocum is directed to the 10701(e) consideration. Hocum testifies in his affidavit that the discounted rates, which were roughly half the rates now sought to be collected by plaintiff, were "sufficient to move the traffic, attract capital investment in new equipment and other operating property, pay the wages and benefits of those employed in moving the freight." Furthermore, Robert Wittenberg, a nine-year employee of plaintiff, states in his affidavit that the discounted rates which were 40 to 55 percent of the rates now sought were compensatory for the cost of the service provided.

These statements are sufficient to meet the threshold showing of unreasonableness required for reference to the Interstate Commerce Commission.

## CONCLUSION

The issues concerning the applicability of the rates advanced by the plaintiff concern fundamental policy choices expressly within the competence of the Interstate Commerce Commission, whose resolution is necessary for the continued uniformity of the law. The rate reasonableness issue is unquestionably

within the special competence of the ICC and a threshold showing of unreasonableness has been made by the defendant. The Court finds no prejudice from a dismissal of this matter without prejudice pending resolution of these issues by the ICC.

## ORDER

IT IS ORDERED that plaintiff's complaint is DISMISSED without prejudice subject to this Court's continuing jurisdiction and re-opening upon an appropriate motion in the event the matter is either not timely pursued before the Interstate Commerce Commission or the issues are not fully resolved and/or dispositive in that forum.