**JONES TRUCK LINES, INC., Debtor–In–Possession, Plaintiff,**

v.

**WD40 COMPANY, Defendant.**

Civ. No. 94–5054.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

July 29, 1994.

Charles T. Coleman, Kimberly W. Tucker, Wright, Lindsey & Jennings, Little Rock, AR, for plaintiff.

Don A. Smith, Harper, Young, Smith & Maurras, Fort Smith, AR, George Carl Pezold, Huntington, NY, for defendant.

### MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

■ Presently pending for disposition in the above styled matter is a motion for a stay of proceedings and a referral to the Interstate Commerce Commission filed by the defendant, WD40 Company (WD40).[1] The plaintiff, Jones Truck Lines, Inc. (Jones), has not responded in the time provided by the Local Rules for the Eastern and Western Districts of Arkansas. Also before the court is a motion for summary judgment filed by Jones and the defendant's response thereto.

### Background.

On July 9, 1991, Jones filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. This action was initially filed as an adversary proceeding in the United States Bankruptcy Court for

---

1. There is no provision in the Interstate Commerce Act for "referral" of cases from a district court to the Interstate Commerce Commission. See *Reiter v. Cooper,* —— U.S. ——, —— n. 3, 113 S.Ct. 1213, 1220 n. 3, 122 L.Ed.2d 604 (1993).

Therefore, the court can only dismiss an action without prejudice and order the defendant to promptly submit the issues to the ICC for resolution.

the Western District of Arkansas, Fayetteville Division. Defendant's motion to withdraw reference of the adversary proceeding was granted on April 7, 1994.

This is one of a number of "freight undercharge" cases on the court's current docket filed by Jones against various shippers. Jones contends that the defendant tendered freight to Jones, a motor common carrier, for transportation in interstate commerce and that Jones performed services for the defendant pursuant to authority issued by the Interstate Commerce Commission (ICC). Jones further contends that all of defendant's shipments have been audited by comparing the commodities, weights, points of origin and destination, and declared value of each shipment to the applicable tariff rate and rules provisions on file with the ICC which were effective on the date of the shipment. As a result of the audit, Jones seeks to recover $40,121.46 in undercharges from the defendant.

Specifically, the claims at issue involve a total of 352 shipments. Corrected freight bills have been sent for each shipment. The dates of the original freight bills were between July 18, 1988, and April 4, 1991. Each bill originally applied a discount rate. This discount rate was on the majority of the bills 55% of the filed tariff rate. Jones now seeks to recover the difference between the amounts originally billed and paid in full by the defendant and the higher, undiscounted, rates.

In its answer, defendant raised a number of defenses and/or counterclaims. WD40 asserts three defenses or counterclaims which are relevant to the motion to stay: (1) it claims that the freight contracts at issue were made pursuant to contract carriage, not common carriage; (2) it claims that Jones' attempts to collect the instant corrected freight bills constitutes an unreasonable practice; and (3) it claims that the filed rates now sought to be charged are unreasonable. Defendant contends each of these issues fall within the primary jurisdiction of the ICC.

Defendant asserts that the transportation services provided by the plaintiff were made pursuant to contract carrier requirements which are exempt from the "filed rate" doctrine. Defendant maintains that a transportation agreement effective on May 17, 1987, supports the conclusion that the shipments were moved pursuant to contract carrier authority rather than pursuant to common carrier requirements as plaintiff argues. The agreement recites the number of Jones' ICC contract carrier permit.

Defendant argues, therefrom, that the contractual rate governs the shipping charges rather than the published tariffs rates pursuant to which plaintiff now seeks undercharges. Defendant supports its contentions with the affidavit of Michael Bange, a transportation consultant. In his affidavit Bange indicates the transportation agreement provides for a discount of 55% off all classes of freight rates on outbound, prepaid and collect shipments, with a minimum charge floor of $30. Bange further states that all of the shipments in the lawsuit moved subsequent to the execution of the agreement and virtually all of the original freight bills were rated showing discounts equal to those set forth in the agreement.

In light of this, defendant asserts that this issue, contract carriage versus common carriage, first should be decided by the ICC under the "primary jurisdiction" doctrine. Defendant is represented by the same counsel who have handled a number of the Jones undercharge cases pending before this court. For that reason, counsel is aware that this court in a memorandum opinion issued on October 13, 1993, in *Jones Truck Lines, Inc. v. Iversen Baking Company,* 837 F.Supp. 290 (W.D.Ark.1993) had previously refused to "refer" the issue of contract versus common carriage to the ICC. On this point, the court is referred to section 8 of the Negotiated Rates Act of 1993 (NRA), Pub.L. No. 103–180, 107 Stat. 2044 (1993). Defendant contends this provision now clearly compels the conclusion that the issue of contract versus common carriage falls within the primary jurisdiction of the ICC.

Next, defendant contends that the Negotiated Rates Act of 1993 makes specific remedies available to shippers with respect to shipments moving prior to September 30, 1990. According to Bange, all but four of the

shipments at issue occurred before September 30, 1990, and would be eligible for the "unreasonable practice" relief provided in the Act. Defendant also contests the reasonableness of the rates charged by the plaintiff and contends the issue of reasonableness falls within the primary jurisdiction of the ICC.

As we previously noted, plaintiff has not responded to the motion for stay or referral. Plaintiff has, however, moved for summary judgment asking the court to enter judgment in its favor based on the application of the filed rate doctrine. Plaintiff also argues that it is entitled to an award of prejudgment interest from the dates of delivery of each shipment. Jones supports its motion with the corrected freight bills applying the undiscounted filed tariff rate and with the affidavit of Stephen L. Swezey, a freight auditor and analyst employed by Carrier Service, Inc. Carrier Service Inc., was retained by Jones, with the permission of the Bankruptcy Court, to conduct audits and collect receivables and freight charges.

Jones argues that under the filed rate doctrine WD40 should be required to pay the tariff rates before it is allowed to pursue its "unreasonableness" counterclaim. Jones recognizes that the court has the discretion to stay entry of judgment but argues the equities favor the entry of judgment in its favor. In Jones' opinion the defendant's unreasonableness counterclaim is nothing more than a rehash of the negotiated rates defense rejected by the Supreme Court in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). In this regard Jones argues that the provisions of the NRA do not apply to bankrupt motor carriers. In another Jones case this court has already rejected Jones' argument that the NRA does not apply to bankrupt carriers. For the court's reasoning in this respect, the parties are referred to the court's memorandum opinion in *Jones Truck Lines, Inc. v. Whittier Wood Products, Inc.,* No. 94–5071, 1994 WL 525534 (July 18, 1994) and the cases cited therein.

### Primary Jurisdiction.

The general division of initial jurisdiction between the courts and the ICC is defined by the "primary jurisdiction" doctrine, which requires that

> " 'issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by the act' be submitted initially to the Commission for determination. Therefore, a district court trying a case under the Interstate Commerce Act *must,* if presented with such an issue, stay its proceedings and refer the case to the Commission."

*Advance United Expressways, Inc. v. Eastman Kodak Co.,* 965 F.2d 1347, 1352–53 (5th Cir.1992), quoting *Interstate Commerce Com'n v. Atlantic Coast R.,* 383 U.S. 576, 579, 86 S.Ct. 1000, 1003, 16 L.Ed.2d 109 (1966).

The Court of Appeals for the Seventh Circuit has identified the following three policy reasons for applying the doctrine of primary jurisdiction:

> Initially, primary jurisdiction promotes consistency and uniformity, particularly where the development of the law is dependent to some degree upon administrative policy. Second, an administrative agency is uniquely qualified to resolve the complexities of certain areas which are outside the conventional experience of the court. Finally, primary jurisdiction serves judicial economy because the dispute may be decided within the agency, thus obviating the need for the courts to intervene.

*Ryan v. Chemlawn Corp.,* 935 F.2d 129, 131 (7th Cir.1991) (citations omitted.).

■ The doctrine is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular duties." *United States v. Western Pacific R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The Court of Appeals for the Sixth Circuit has stated that "[t]he principal reasons for the doctrine of primary jurisdiction are to obtain the benefit of the expertise and experience of the administrative agencies and the desirable uniformity which occurs when a specialized agency decides certain administrative questions." *Alltel Tennessee, Inc. v. Tennessee Public Service Com'n,* 913 F.2d 305, 309 (6th

Cir.1990) (citations omitted). Thus, the doctrine of primary jurisdiction applies when an issue arises in the course of litigation which, pursuant to a regulatory scheme, is within the special competence of an administrative agency. *Lifschultz Fast Freight, Inc. v. Rainbow Shops, Inc.*, 784 F.Supp. 89, 90 (S.D.N.Y.1992).

■ Each issue alleged to fall within the primary jurisdiction of the ICC must be examined separately. The court must, therefore, proceed to determine whether the three primary issues in this case should be referred to the ICC.

### Filed Rate Doctrine.

■ Under the Interstate Commerce Act, 49 U.S.C. § 10101 et seq. (1994 Supp.), motor common carriers must file their rates with the ICC and adherence to those rates is required of both carriers and shippers. *Maislin Industries, Inc. v. Primary Steel Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). The classic statement of the "filed rate" doctrine, governing the legal relationship between carrier and shipper, is contained within *Louisville & Nashville R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). In that case, the Court held that a passenger who purchased a train ticket at a rate misquoted by the ticket agent did not have a defense against the subsequent collection of the higher tariff by the railroad. The Court stated:

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide with it, unless it is found by the Commission to be unreasonable. Ignorance nor misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work a hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Id.*, 237 U.S. at 97, 35 S.Ct. at 495.

■ Despite the harsh effects of the doctrine, the Supreme Court consistently has adhered to the "filed rate" doctrine. *See, e.g., Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983); *Southern Pacific Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 343–44, 102 S.Ct. 1815, 1820–21, 72 L.Ed.2d 114 (1982); *Baldwin v. Scott County Milling Co.*, 307 U.S. 478, 484–85, 59 S.Ct. 943, 947–48, 83 L.Ed. 1409 (1939); *Louisville & Nashville R. Co. v. Central Iron & Coal Co.*, 265 U.S. 59, 65, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924). One important exception, however, does exist: the filed rate is unenforceable if the ICC finds the rate to be unreasonable. *Maislin*, 497 U.S. at 128, 110 S.Ct. at 2767.

■ Moreover, the doctrine is inapplicable to contract carriers. Motor carriers may operate as both common carriers and contract carriers. As a contract carrier transports property under exclusive agreements with a shipper, the ICC has exempted all motor contract carriers from the published tariff requirements of §§ 10761 and 10762. 49 U.S.C. §§ 10761, 10762. The Supreme Court's decision in *Maislin* made exceedingly clear, however, that this exemption has not been extended to motor common carriers:

> Even before passage of the MCA [Motor Carrier Act of 1980], Congress has allowed the Commission to exempt motor *contract* carriers from the requirement that they adhere to the published tariff, see 49 U.S.C. § 10761(b) (1982 ed.), demonstrating that Congress is aware of the requirement and has deliberately chosen not to disturb it with respect to motor *common* carriers. If strict adherence to §§ 10761 and 10762 as embodied in the filed rate doctrine has become an anachronism in the wake of the MCA, it is the responsibility of Congress to modify or eliminate these sections.

*Maislin*, 497 U.S. at 133–37, 110 S.Ct. at 2770–71 (footnote omitted).

In *Maislin*, the Supreme Court discussed the filed rate doctrine and rejected the ICC's negotiated rates policy which provided trustees could not rebill the filed rate for shipments originally billed at a lower, negotiated

rate. *Maislin,* 497 U.S. at 120–26, 110 S.Ct. at 2763–65. The Supreme Court held that the "negotiated rates policy" violated the Interstate Commerce Act and that the trustee's undercharge claims were valid. *Id.,* 497 U.S. at 124–37, 110 S.Ct. at 2765–71.

*Contract versus Common Carriage.*

■ The ICC exempted contract carriers from the published tariff requirements or filed rate doctrine in 1983. *See Covey v. ConAgra, Inc.,* 788 F.Supp. 1160, 1162 (D.Colo.1992); Exemption of Motor Contract Carriers From Tariff Filing Requirements, 133 M.C.C. 150 (1983), *aff'd sub nom. Central & S. Motor Freight Tariff Ass'n v. United States,* 757 F.2d 301 (D.C.Cir.), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). The term "motor contract carrier" is defined in 49 U.S.C. § 10102(15). It is undisputed that Jones operated as both a common and a contract carrier.

WD40 both opposes summary judgment and moves for a stay on the grounds that Jones acted as a contract carrier with respect to the shipments at issue. WD40 wants to bring the issue of contract versus common carriage before the ICC. If Jones is found to have operated as a common carrier, WD40 contends Jones engaged in "unreasonable practices" and that the filed rates are unreasonable.

The threshold issue in this action is the nature of the carriage, *i.e.,* whether Jones operated as a motor common carrier, as Jones contends, or as a motor contract carrier, as the defendant asserts. If Jones was in fact operating as a contract carrier, it is not entitled to its filed rates and may not collect the freight undercharges sought in this action.

In the memorandum opinion issued on October 13, 1993, in *Jones Truck Lines, Inc. v. Iversen Baking Company,* 837 F.Supp. 290, this court refused to refer the issue of contract versus common carriage to the ICC concluding that the issue was a fact-laden issue not unsimilar to that faced by courts in every contract dispute. *See e.g., RTC Transportation, Inc. v. Conagra Poultry Co.,* 971 F.2d 368 (9th Cir.1992); *F.P. Corp. v. Golden West Foods,* 807 F.Supp. 1228 (W.D.Va.1992), *aff'd,* 27 F.3d 562 (4th Cir.1994); *Covey v.*

*ConAgra, Inc.,* 788 F.Supp. 1160 (D.Colo. 1992). We further noted that *Atlantis Express, Inc. v. Standard Transportation Services, Inc.,* 955 F.2d 529 (8th Cir.1992) did not require referral because it was handed down during a period when the ICC had created confusion over its own standards for distinguishing contract and common carriage.

Defendant is now in essence asking us to alter our prior position in light of the provisions of the Negotiated Rates Act of 1993. The NRA amended portions of the Interstate Commerce Act and was enacted to solve the problems created by the increase of carrier undercharge litigation being brought by or on behalf of bankrupt carriers. In relevant part the NRA amended 49 U.S.C. § 11101 to provide as follows:

> **(d) Resolution of disputes relating to contract or common carrier capacities.**—If a motor carrier (other than a motor carrier providing transportation of household goods) subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title has authority to provide transportation as both a motor common carrier and a motor contract carrier and a dispute arises as to whether certain transportation is provided in its common carrier or contract capacity and the parties are not able to resolve the dispute consensually, the Commission **shall have jurisdiction to, and shall, resolve the dispute.**

49 U.S.C. § 11101(d) (emphasis added).

Given this provision, it has been stated that "[t]here is no question that the issue of whether transportation is contract or common carriage has 'been placed within the special competence' of the Interstate Commerce Commission." *Official Unsecured Creditors' v. Consolidated Papers,* 847 F.Supp. 651 (W.D.Wis.1994). *See also Jones Truck Lines, Inc. v. Grinnell Corporation,* 167 B.R. 488 (N.D.Ill.1994). We thus turn to an examination of the material submitted to determine whether defendant has satisfied the threshold showing requirement for referral of this issue.

■ WD40 has provided the court with a copy of Jones' contract carrier permit and a

copy of the transportation agreement entered into between Jones and WD40. The agreement in question was effective on May 17, 1987, and references on its face Jones' contract carrier permit number. The agreement provides for freight rate reductions and allowances. Specifically, the agreement provides for the application of a 55% discount off of applicable "class" rates for certain types of shipments from WD40's Houston, Texas, location. The agreement also provides for a minimum floor charge of $30.00.

Bange states that the discount rate was applied to nearly all of the original freight bills submitted on less-than-truckload shipments. *Bange Affidavit (Aff.)* at 14. The majority of the bills, 349, show defendant's Houston, Texas, facility as the point of origin. *Bange Aff.* at 15.

Given the supporting materials submitted, we conclude defendant has made a threshold showing justifying the application of the primary jurisdiction doctrine to this issue. The court is mindful that this decision represents a shift in its prior position. However, in view of the language of the NRA we now believe the contract versus common carriage issue falls within the primary jurisdiction of the ICC.

**Unreasonable Practice.**

■ Section 2(e) of the NRA reinstates the unreasonable practice defense eliminated by the Supreme Court's decision in *Maislin.* Section 2(e) provides:

(e) ALTERNATIVE PROCEDURE FOR RESOLVING DISPUTES.—

(1) GENERAL RULE.—For purposes of section 10701 of title 49, United States Code, it shall be an unreasonable practice for a motor carrier of property (other than a household goods carrier) providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of such title, a freight forwarder (other than a household goods freight forwarder), or a party representing such a carrier or freight forwarder to attempt to charge or to charge for transportation service provided before September 30, 1990, the difference between the applicable rate that is lawfully in effect pursuant to a tariff that is filed in accordance with chapter 107

of such title by the carrier or freight forwarder applicable to such transportation service and the negotiated rate for such transportation service if the carrier or freight forwarder is no longer transporting property between places described in section 10521(a)(1) of such title or is transporting property between places described in section 10521(a)(1) of such title for the purpose of avoiding the application of this subsection.

(2) JURISDICTION OF COMMISSION.—The Commission shall have jurisdiction to make a determination of whether or not attempting to charge or the charging of a rate by a motor carrier or freight forwarder or party representing a motor carrier or freight forwarder is an unreasonable practice under paragraph (1). If the Commission determines that attempting to charge or the charging of the rate is an unreasonable practice under paragraph (1), the carrier, freight forwarder, or party may not collect the difference described in paragraph (1) between the applicable rate and the negotiated rate for the transportation service. In making such determination, the Commission shall consider—

(A) whether the person was offered a transportation rate by the carrier or freight forwarder or party other than that legally on file with the Commission for the transportation service;

(B) whether the person tendered freight to the carrier or freight forwarder in reasonable reliance upon the offered transportation rate;

(C) whether the carrier or freight forwarder did not properly or timely file with the Commission a tariff providing for such transportation rate or failed to enter into an agreement for contract carriage;

(D) whether the transportation rate was billed and collected by the carrier or freight forwarder; and

(E) whether the carrier or freight forwarder or party demands additional payment of a higher rate filed in a tariff.

(3) STAY OF ADDITIONAL COMPENSATION.—When a person proceeds under this subsection to challenge the rea-

sonableness of the practice of a motor carrier, freight forwarder, or party described in paragraph (1) to attempt to charge or to charge the difference described in paragraph (1) between the applicable rate and the negotiated rate for the transportation service in addition to those charges already billed and collected for the transportation service, the person shall not have to pay any additional compensation to the carrier, freight forwarder, or party until the Commission has made a determination as to the reasonableness of the practice as applied to the freight of the person against whom the claim is made.

 * * * * * *

Also relevant to our analysis are the NRA's amendments to § 10701, including the following provisions:

**(f) Procedures for resolving claims involving unfiled, negotiated transportation rates.—**

**(1) In general.**—When a claim is made by a motor carrier of property (other than a household goods carrier) providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title, by a freight forwarder (other than a household goods freight forwarder), or by a party representing such a carrier or freight forwarder regarding the collection of rates or charges for such transportation in addition to those originally billed and collected by the carrier or freight forwarder for such transportation, the person against whom the claim is made may elect to satisfy the claim under the provisions of paragraph (2), (3), or (4) of this subsection, upon showing that—

**(A)** the carrier or freight forwarder is no longer transporting property or is transporting property for the purpose of avoiding the application of this subsection; and

**(B)** with respect to the claim—

(i) the person was offered a transportation rate by the carrier or freight forwarder other than that legally on file with the Commission for the transportation service;

(ii) the person tendered freight to the carrier or freight forwarder in reasonable reliance upon the offered transportation rate;

(iii) the carrier or freight forwarder did not properly or timely file with the Commission a tariff providing for such transportation rate or failed to enter into an agreement for contract carriage;

(iv) such transportation rate was billed and collected by the carrier or freight forwarder; and

(v) the carrier or freight forwarder demands additional payment of a higher rate filed in a tariff.

 * * * * * · *

**(6) Stay of additional compensation.**—When a person proceeds under this section to challenge the reasonableness of the legally applicable freight rate or charges being claimed by a carrier or freight forwarder described in paragraph (1) in addition to those already billed and collected, the person shall not have to pay any additional compensation to the carrier or freight forwarder until the Commission has made a determination as to the reasonableness of the challenged rate as applied to the freight of the person against whom the claim is made.

49 U.S.C. § 10701(f)(1) & (f)(6).

In Bange's affidavit he states that 348 of the 352 shipments involved in this suit moved prior to the date of September 30, 1990. As the plaintiff is a non-operating carrier in bankruptcy, the threshold criteria are satisfied. Given Jones' position that the transportation was done in its capacity as a common carrier, it thus appears that the ICC has primary jurisdiction over the unreasonable practice defense. *See Jones Truck Lines, Inc. v. Grinnell Corp.,* 167 B.R. 488 (N.D.Ill. 1994).

*Rate Reasonableness.*

 It is undisputed that a determination of rate reasonableness is within the special competence of the ICC. *Reiter v. Cooper,* —— U.S. ——, ——, 113 S.Ct. 1213, 1217, 122 L.Ed.2d 604 (1993). Thus, where the reasonableness of a tariff rate is at issue, the primary jurisdiction doctrine compels that "there must be preliminary resort to the Commission." *Great Northern Ry. v. Mer-*

*chants Elevator Co.,* 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922).

■ The sole issue presented is whether the defendant has made a sufficient showing for referral of this issue to the ICC. A party seeking referral is required to "make a threshold showing that the ICC could find the rates unreasonable" to justify referral. *Atlantis,* 955 F.2d at 537. *See also Milne Truck Lines, Inc. v. Makita U.S.A., Inc.,* 970 F.2d 564, 570 (9th Cir.1992). The moving party is required to provide more than a "bare conclusory allegation of unreasonableness" before a court will refer the issue to the ICC. *Atlantis Express, Inc. v. Standard Transportation Services, Inc.,* 955 F.2d 529 (8th Cir.1992). There must be some evidence presented from which the ICC can make a meaningful determination on the issue of reasonableness. Reference to the ICC on the basis of a "mere incantation of the doctrine of primary jurisdiction would be tantamount to allowing the doctrine to become 'an abstraction to be called into operation at the whim of the pleader.'" *In re Sharm Exp., Inc.,* 127 B.R. 620, 623 (D.Minn.1991).

Standards for determining whether rates are reasonable are codified at 49 U.S.C. § 10701(e) which provides:

**(e)** Except as provided in subsection (f), in proceedings to determine the reasonableness of rate levels for a motor carrier or group of motor carriers, or in proceedings to determine the reasonableness of a territorial rate structure where rates are proposed through agreements authorized by section 10706(b) of this title, the Commission shall authorize revenue levels that are adequate under honest, economical, and efficient management to cover total operating expenses, including the operation of leased equipment and depreciation, plus a reasonable profit. The standards and procedures adopted by the Commission under this subsection shall allow the carriers to achieve revenue levels that will provide a flow of net income, plus depreciation, adequate to support prudent capital outlays, assure the repayment of a reasonable level of debt, permit the raising of needed equity capital, attract and retain capital in amounts adequate to provide a

sound motor carrier transportation system in the United States, and take into account reasonable estimated or foreseeable future costs. Any complaint brought against a motor carrier (other than a carrier described in subsection (f)(1)(A)) by a person (other than a motor carrier) for unreasonably high rates for past or future transportation shall be determined under this subsection.

49 U.S.C. § 10701(e). The ICC also provided guidance on this issue in a policy statement issued in 1991. In that statement the ICC listed the following general criteria to be used in determining reasonableness: (a) relevant rate comparisons; (b) a carrier's proffer of a particular rate; (c) whether the rate would have moved the traffic had it been assessed at the time the shipment took place; (d) the class rates for like traffic; and (e) tariff analysis. *Petition for Issuance of Rate Reasonableness and Unreasonable Practices Policy Statement,* Ex Parte No MC–177 (Sub.–No. 2), 8 I.C.C.2d 61, 74 (1991).

■ Bange's affidavit addressed the first three of these general criteria. It is pointed out that the corrected freight charges the plaintiff now seeks to collect for the shipments at issue are in most cases more than double the charges originally billed and are more than double the charges of Jones' many competitors. Bange indicates his "review of the tariffs filed by other competing carriers reveals that the carriers published and filed discounts and discounted rates in the same general range as those shown on the *original* freight bills of Jones." *Bange Aff.* at 25. Bange also states that the discounted rates proffered to the defendant and others during this period by Jones provide a measure of the level of rates produced by the forces of the market place. Bange refers the court to a number of published discount tariffs.

Having carefully reviewed the material submitted, the court concludes the defendant has made the threshold showing of unreasonableness required for reference to the ICC. *See Jones Truck Lines, Inc. v. Grinnell Corp.,* 167 B.R. 488 (N.D.Ill.1994).

*Conclusion.*

In view of the provisions of the NRA and the rationale behind the primary jurisdiction doctrine, the court concludes the ICC has primary jurisdiction over the contract versus common carriage issue, the unreasonable practice defense, and the rate reasonableness counterclaim. *See Jones Truck Lines, Inc. v. AFCO Steel, Inc.,* 849 F.Supp. 1296 (E.D.Ark.1994); *Official Unsecured Creditors' v. Consolidated Papers,* 847 F.Supp. 651 (W.D.Wis.1994); *Jones Truck Lines, Inc. v. Grinnell Corporation,* 167 B.R. 488 (N.D.Ill. 1994); *Jones Truck Lines, Inc. v. Alliance Rubber Company,* 166 B.R. 691 (W.D.Ark. 1994). *See also North Penn Transfer, Inc. v. Victaulic Co.,* 859 F.Supp. 154 (E.D.Penn. 1994); *Allen v. Spiegel, Inc.,* 169 B.R. 394 (N.D.Ill.1994); *Jones Truck Lines, Inc. v. Frigid Fluid Co.,* 169 B.R. 52 (N.D.Ill.1994); *Jones Truck Lines, Inc. v. Kraft Gen. Foods, Inc.,* No. 93–C–3719, 1994 WL 194292, 1994 U.S.Dist. LEXIS (N.D.Ill. May 5, 1994); *Jones Truck Lines, Inc. v. Admiral Marine Company,* 858 F.Supp. 71 (E.D.La.1994); *Jones Truck Lines, Inc. v. Aladdin Synergetics, Inc.,* No. 3–93–0442, 1994 WL 150154, 1994 U.S.Dist. LEXIS 3191 (M.D.Tenn. February 11, 1994). Further, we conclude the defendant has made the required threshold showing to justify referral of each of these issues to the ICC.

The court also concludes plaintiff's motion for summary judgment must be denied because there remain genuine issues of fact concerning the plaintiff's carriage capacity. If this issue is resolved favorably for the plaintiff, there still remain genuine issues of fact regarding the unreasonable practice defense and the rate reasonableness counterclaim.

For the reasons stated herein an order will be entered staying this case and directing the parties to submit these issues to the ICC for determination.

### ORDER

On this <u>29th</u> day of July, 1994, came on for consideration the above captioned case. The court finds for the reasons stated in a memorandum opinion of even date that plaintiff's motion for summary judgment should be and hereby is denied and that defendant's motion for stay and referral should be and hereby is granted.

Accordingly, the clerk is directed to enter an administrative termination of the proceedings, without prejudice to the right of the parties to reopen the proceedings, for good cause shown, for entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation. The defendant is ordered to file its claims with the Interstate Commerce Commission for resolution of the contract versus common carriage issue, the unreasonable practice defense, and the unreasonable rate counterclaim within **thirty days.**

IT IS SO ORDERED.