JONES TRUCK LINES, INC., Debtor–In–Possession, Plaintiff,

v.

JIFFY PRODUCTS OF AMERICA, INC., Defendant.

No. 93 C 1958.

United States District Court, N.D. Illinois, E.D.

Sept. 29, 1993.

Lawrence M. Liebman, Timothy F. Eddy, Eddy & Liebman, Chicago, IL, for Jones Truck Lines, Inc.

Sara Elwood Cook, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, for Jiffy Products of America Inc.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is defendant Jiffy Products of America, Inc.'s ("Jiffy") motion for a stay and referral of this action to the Interstate Commerce Commission ("ICC"). For reasons stated below, the court grants the motion for a stay of proceedings pending a referral to the ICC.

### FACTS

This case concerns reoccurring problems in the motor carrier industry as well as the reoccurring collision between federal undercharge lawsuits and the ICC's primary jurisdiction. Plaintiff Jones Truck Lines, Inc. ("Jones Truck Lines") is attempting to collect $3,309.20 in undercharges plus $597.12 in interest for approximately thirty-eight freight shipments it made for Jiffy between the dates of July 20, 1988 and July 6, 1989. Jones Truck Lines has since ceased operations and has filed for bankruptcy.

Jones Truck Lines sent an invoice to Jiffy for payment which reflected a discounted rate and charge. Jiffy paid this amount in full. Jones Truck Lines' auditor subsequently prepared a "balance due" invoice setting forth a reason for the undercharge in the original freight bill and reflecting re-calculated freight charges. The new invoice employed the full, undiscounted rates contained in Jones Truck Lines' own class rate tariff filed with the ICC. These recalculated charges are, in some cases, more than double the amounts originally billed.

Jones Truck Lines filed the present lawsuit to recover the unpaid balance due for the undercharges. Jiffy responded by filing a counterclaim asserting that Jones Truck Lines' tariff rate is unreasonable. Jiffy also filed the present motion to stay these proceedings and to refer to the ICC the issue of the reasonableness of the rate.

## DISCUSSION

■ A tariff filed with the ICC obligates a motor carrier to charge only the rate incorporated in the tariff. *Brizendine v. Cotter & Co.*, 4 F.3d 457, 460 (7th Cir.1993). A filed rate, however, also prevents a shipper from avoiding the payment of the tariff rate, even if the shipper had privately agreed with the carrier to a lower price or if the shipper was unaware of the filed rate. *Id.* at 460. Nevertheless, a rate that the ICC finds is unreasonable or discriminatory is unlawful and cannot be enforced by the carrier. *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 128, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990).

■ An administrative complaint may be filed with the ICC which will elicit a determination of whether the carrier's rate is unreasonable. *See, e.g.*, 49 U.S.C. §§ 11701(b) and 11705(c)(1). The problem, however, is that a rate which the ICC accepts for filing, and which is in effect, remains enforceable prior to any ICC determination, regardless of whether the tariff contains a substantively unlawful rate or if the tariff violated ICC filing rules. *Brizendine*, at 463; *Overland Express, Inc. v. Interstate Commerce Comm'n*, 996 F.2d 356, 360–61 (D.C.Cir. 1993). Thus, a carrier has no incentive to bring to the attention of the ICC the reasonableness of its tariff, but is provided a great incentive to file suit and recover undercharges even on unlawful rates. Further, a shipper does not usually enjoy the foresight to know that the carrier will be bringing suit and thus will also fail to bring the matter concerning the reasonableness of the tariff rate before the ICC.

■ Nonetheless, shippers are not precluded from asserting claims or defenses provided by the Interstate Commerce Act ("ICA"), 49 U.S.C. § 10701 *et seq.* in order to avoid a tariff rate, such as the reparations rights specifically granted by 49 U.S.C. § 11705(b)(3). *Reiter v. Cooper*, —— U.S. ——, ——, 113 S.Ct. 1213, 1219, 122 L.Ed.2d 604 (1993). The usual route for shippers has therefore been to assert the unlawfulness of a rate as a counterclaim to an action brought by a carrier for undercharges. *See id.* at ——, 113 S.Ct. at 1217. Consequently, the reasonableness issue frequently emerges in the federal court before the ICC has an opportunity to make a finding.

■ The unlawfulness of a tariff rate, however, is an issue that should be determined primarily by the ICC because the ICC holds regulatory expertise in the motor carrier industry. *See United States v. Western P.R. Co.*, 352 U.S. 59, 63, 69–70, 77 S.Ct. 161, 164, 168, 1 L.Ed.2d 126 (1956); *Lifschultz Fast Freight v. JBS Warehousing, Inc.*, 809 F.Supp. 51, 53 (N.D.Ill.1992). Application of the doctrine of primary jurisdiction is appropriately the end result. This doctrine applies to claims that are properly cognizable in the courts, but which contain issues within the special competence of an administrative agency. *Reiter*, —— U.S. at ——, 113 S.Ct. at 1220. The doctrine requires the court to stay further proceedings and allow the parties a reasonable opportunity to present the specialized issues to an administrative agency for an appropriate administrative ruling. *Id.* A court can also, if the parties would not be unfairly disadvantaged, dismiss the case without prejudice, pending a referral to the administrative agency. *Id.*

■ In the present case, the issues contested by the parties are within the special competence of the ICC requiring a stay of all proceedings. At issue is the reasonableness of the tariff provisions and the way Jones Truck Lines now seeks to apply them. Additionally, because the court must measure the damages due a shipper who has successfully asserted the unlawfulness of a filed rate as a counterclaim by determining the amount by which the rate charged exceeded a reasonable rate, *Brizendine*, at 460–61, and because this damage figure cannot be calculated absent an idea as to what constitutes a reasonable rate, efficiency is best served by staying

the proceedings to allow the ICC to determine the reasonableness issue. Further, if the ICC determines that the rates are unreasonable, then Jones Truck Lines' rates are unenforceable. *Maislin*, 497 U.S. at 127–29, 110 S.Ct. at 2766–67. The final resolution of this case therefore presents issues involving the interpretation and application of detailed, complex tariff provisions making a stay and referral appropriate. *See, e.g., Western Transp. Co. v. Wilson & Co.*, 682 F.2d 1227, 1232 (7th Cir.1982); *Lifschultz*, 809 F.Supp. at 52–53.

In cases involving undercharges, however, it is also permissible to proceed with the principal case brought by the carrier, to stay enforcement of any judgment, and then await the ICC's reasonableness determination in order to later proceed with the shipper's counterclaim. *Reiter*, —— U.S. at ——, 113 S.Ct. at 1221. Jones Truck Lines requests this court to follow that procedure. But the court must weigh the equities in determining whether to continue with the carrier's case while only staying the shipper's counterclaim; and an important equity in favor of a stay is whether the carrier is insolvent. *Id.* Because Jones Truck Lines has filed for bankruptcy, the equities do not favor proceeding to judgment on Jones Truck Lines' claim and then requiring Jiffy to attempt to recoup later.

The next issue to be resolved is whether Jiffy has made a threshold showing of unreasonableness sufficient to obtain a stay in this case. This court has passed on the opportunity to articulate any specific threshold level of unreasonableness a shipper is required to demonstrate in order to obtain a stay. *See Lifschultz*, 809 F.Supp. at 53. A shipper cannot, however, obtain a stay merely by baldly asserting that reasonableness will be raised as an issue in the case. An improvident stay would unnecessarily delay the carrier's right to recover. The doctrine of primary jurisdiction would become "an abstraction ... called into operation at the whim of the pleader" if a party can merely phrase an issue as one of reasonableness. *See Western Pacific*, 352 U.S. at 69, 77 S.Ct. at 167. Jones Truck Lines is seeking charges that amount to more than double the amount of the original bill. On a comparison basis, other carriers offered rates matching the amount originally charged to Jiffy. Jiffy has sufficiently demonstrated that the reasonableness issue as well as other interpretative issues are properly challenged to the extent that the administrative competence of the ICC is necessary for their resolution. *See, e.g., Atlantis Express, Inc. v. Standard Transp. Servs., Inc.*, 955 F.2d 529, 537–38 (8th Cir.1992) (shipper's comparison of rates between carrier and other carriers that showed carrier's rates were higher than market rate was sufficient to grant stay); *Lifschultz*, 809 F.Supp. at 53 (forty percent increase sufficient to warrant stay and referral).

There is one last technical matter that must be addressed. Jiffy's motion requests this court to refer the issue to the ICC. There is no direct mechanism through which the court can accomplish a referral. *See Reiter*, —— U.S. at ——, 113 S.Ct. at 1220 n. 3. The proper procedure is to make an application to the ICC for the reasonableness determination. *See Western Transp.*, 682 F.2d at 1231; 49 U.S.C. § 11701(b). Thus, the granting of this motion does not present the issue to the ICC by its own application.

In sum, the issue of the reasonableness of Jones Truck Lines' rates and the application of the tariff is appropriately a matter for the primary jurisdiction of the ICC. The court accordingly stays the proceedings in order to provide a reasonable opportunity within which Jiffy may apply to the ICC for a ruling as to the reasonableness of Jones Truck Lines' rates.

### CONCLUSION

For the foregoing reasons, the court grants Jiffy's motion for a stay of proceeding pending a referral to the ICC.

IT IS SO ORDERED.