JONES TRUCK LINES, INC., Debtor–In–Possession, Plaintiff,

v.

GRINNELL CORPORATION ANVIL PRODUCTS DIVISION, Defendant.

No. 93 C 4093.

United States District Court, N.D. Illinois, Eastern Division.

May 6, 1994.

Lawrence M. Liebman, Timothy F. Eddy, Eddy & Liebman, Chicago, IL, for Jones Truck Lines, Inc.

Sara Elwood Cook, Christine Louise Olson, Ellen Debra Holzman, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, for Grinnell Corp. Anvil Products Div.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This is an action for freight undercharges brought by the Plaintiff, Jones Truck Lines,

Inc. ("Jones"), a carrier, against Grinnell Corporation Anvil Products Division ("Grinnell"), a shipper. Jones seeks to recover $9,047.50 in freight undercharges under the "filed rate doctrine." Before the Court is Grinnell's Motion for a Stay of Proceedings and a Referral to the Interstate Commerce Commission. For the following reasons, the motion is granted.

## I. BACKGROUND

Jones alleges that it transported goods for Grinnell subject to the provisions of the Interstate Commerce Act, 49 U.S.C. §§ 10101 *et seq.* Among these provisions is the requirement that a carrier file tariffs with the Interstate Commerce Commission ("ICC"). Jones contends that it filed tariffs with the ICC containing rates applicable to its transportation for Grinnell, that Grinnell has paid a portion of the sums due under those filed rates, and that a principal sum of $7,548.64, plus at least $1,498.86 in interest remains due.

Jones seeks to recover sums greater than those charged on ninety-two freight bills. The freight bills represent transportation done by Jones for Grinnell during a period dating from July 18, 1988 to February 1, 1989. These "balance due" bills relate to prepaid "LTL", or less-than-truckload, or "minimum charge" shipments from Grinnell's facilities in Longview, Texas, Franklin Park, Illinois, or Memphis, Tennessee to various destinations in several southern and western states. Of the ninety-two freight bills, all but seven are apparently governed by two form contract "Transportation Agreements" prepared by Jones. The agreements, which were effective on May 4, 1987 and April 13, 1987, both recite Jones's ICC contract carrier permit number and provide between 42% and 55% discounts off of applicable "class" rates, for certain types of shipments out of Grinnell's Longview, Texas, and Franklin Park, Illinois locations. The May 4 and April 13 agreements also provide for minimum charge "floors" of $34.00 and $35.00 respectively.

The remaining seven freight bills, representing shipments from Memphis, Tennessee, contain rate discounts ranging from 45% to 53%, although no Transportation Agreement governing these bills has been located.

In response to Jones's claim, Grinnell asserts several defenses that it argues justifies a stay and a referral of this matter to the ICC. The Court agrees.

## II. ANALYSIS

Grinnell asserts three defenses relevant to the instant motion: (1) it claims that the freight contracts at issue were made pursuant to contract carriage, not common carriage; (2) it claims that Jones's attempts to collect the instant freight are an unreasonable practice; and (3) it claims that the filed rates now charged are unreasonable. These defenses might be referred to the ICC under two precedents: (1) The Negotiated Rates Act of 1993, P.L. 103–180, 107 Stat. 2044 [hereinafter referred to as the "NRA"], amending Title 49 of the United States Code, which would govern any dispute regarding the nature of carriage involved and any claim for an unreasonable practice; and (2) the doctrine of primary jurisdiction, which would govern issues placed, under a regulatory scheme, within the special competence of an administrative body, *see United States v. Western Pac. R.R.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–165, 1 L.Ed.2d 126 (1956), which could include each defense asserted. Jones argues that the NRA does not apply to this case and that Grinnell has not sufficiently demonstrated its other defenses to warrant a referral to the ICC. The Court addresses each of these arguments in turn.

### A. The Applicability of the Negotiated Rates Act

In its 1990 decision *Maislin Indus., U.S. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), the Supreme Court held that the ICC has no authority to find undercharge suits an "unreasonable practice." In reaction to the *Maislin* decision, Congress passed the NRA, several sections of which are relevant to the current dispute.

NRA Section 2(a) states:

(6) STAY OF ADDITIONAL COMPENSATION.—When a person proceeds under this section to challenge the reasonable-

ness of the legally applicable freight rate or charges being claimed by a carrier or freight forwarder ... in addition to those already billed and collected, the person shall not have to pay any additional compensation to the carrier or freight forwarder until the Commission has made a determination as to the reasonableness of the challenged rate ...

49 U.S.C.A. 10701(f)(6) (West Supp.1994). Under this section, then, a person, like Grinnell, challenging the reasonableness of a filed rate, is entitled to a stay until the Commission determines the reasonableness of a plaintiff's filed rate.

NRA Section 2(e) states:

(1) GENERAL RULE.—For purposes of section 10701 of title 49, United States Code, it shall be an unreasonable practice for a motor carrier of property ... providing transportation subject to the jurisdiction of the Commission ... to attempt to charge or to charge for a transportation service provided before September 30, 1990, the difference between the applicable rate that is lawfully in effect pursuant to a tariff that is filed [with the ICC] ... and the negotiated rate for such transportation service if the carrier or freight forwarder is no longer transporting property ...

(2) JURISDICTION OF COMMISSION.—The Commission shall have jurisdiction to make a determination of whether or not attempting to charge or the charging of a rate by a motor carrier or freight forwarder ... is an unreasonable practice under paragraph (1).

Negotiated Rates Act of 1993, P.L. 103–180 § 2(e)(1), 107 Stat. 2047. Because Jones is seeking to collect for transportation provided before September 30, 1990, and because Jones is no longer transporting property, it would appear that the ICC has primary jurisdiction over Grinnell's "unreasonable practice" defense. If this section applies, Grinnell is entitled to a stay of the collection of undercharges until the ICC has ruled on the reasonableness of the charge asserted. *Id.* at § 3.

■ NRA Section 8 states:

(d) RESOLUTION OF DISPUTES RELATING TO CONTRACT OR COM-MON CARRIER CAPACITIES.—If a motor carrier ... subject to the jurisdiction of the Commission ... has authority to provide transportation as both a motor common carrier and a motor contract carrier and a dispute arises as to whether certain transportation is provided in its common carrier or contract carrier capacity and the parties are not able to resolve the dispute consensually, the Commission shall have jurisdiction to, and shall, resolve the dispute.

49 U.S.C.A. § 11101(d) (West Supp.1994). Thus, under this section, the ICC has jurisdiction to resolve disputes over the nature of carrier's status.

■ Despite the explicit provisions of the NRA regarding each of Grinnell's now asserted defenses, Jones, relying on NRA section 9 and section 541(c)(1) of the Bankruptcy Code, contends that none of these provisions applies in this case. Those provisions state as follows:

SEC. 9. LIMITATION ON STATUTORY CONSTRUCTION.

Nothing in this act ... shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; title 28 United States Code, relating to the jurisdiction of the courts of the United States ...

Negotiated Rates Act of 1993, P.L. 103–180 § 9, 107 Stat. 2053.

§ 541. Property of the estate

. . . . .

(c)(1) ... an interest of the debtor in property becomes property of the [bankrupt debtor's estate] ... notwithstanding any provision in an ... applicable non-bankruptcy law—

. . . . .

(B) that is conditioned on the insolvency or financial condition of the debtor ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1) (1988).

Jones argues that section 541(c)(1) conflicts with the NRA and therefore governs

the current inquiry, given Section 9 of the NRA. Although one Bankruptcy Court has accepted this argument, *see In re Bulldog Trucking, Inc.,* No. 92–3100, slip op., 1994 WL 197420 (Bankr.W.D.N.C. Feb. 18, 1994), it is now rejected by this Court, as have several others. *See Jones Truck Lines, Inc. v. Alliance Rubber Co.,* 166 B.R. 691, 692–93 (W.D.Ark.1994); *Jones Truck Lines, Inc. v. Aladdin Synergetics, Inc.,* No. 3–93–0442, slip op. at 9–10, 1994 WL 242165 (M.D.Tenn. Feb. 11, 1994).

■ After a review of the plain language of the NRA and its legislative history, it is the opinion of the Court that Congress intended the NRA to apply to bankrupt debtors. To hold otherwise would be to sanction the absurd position that Congress only intended the statute to apply to carriers that are "no longer transporting property", 49 U.S.C.A. § 10701(f)(1)(A) (West Supp.1994), but that have not filed for bankruptcy. Moreover, Plaintiff's position rests on its showing that the NRA is "conditioned on the insolvency or financial condition of the debtor." 11 U.S.C. § 541(c)(1)(B) (1988). In fact, the NRA is conditioned on a carrier's "no longer transporting property." 49 U.S.C. § 10701(f)(1)(A) (West Supp.1994). The two conditions are not the same. While a carrier's "no longer transporting property" may indicate that the carrier is in financial difficulty, such is not necessary. Similarly, a carrier that is insolvent or in poor financial condition may still be transporting property. In the former case, the NRA would apply. In the latter, it would not.

The Court thus rejects Plaintiff's contention that its status as a bankrupt debtor precludes the application of the NRA.

### B. Referral to the ICC

■ Given the statutory framework established by the NRA and by recent case law, it is now apparent that the ICC has "primary jurisdiction" over each of the defenses discussed in this case. *See* NRA § 8 (indicating that the ICC shall resolve disputes over whether a carrier was a contract carrier); NRA § 2(e)(2) (indicating that the ICC shall have jurisdiction over questions regarding whether the collection of freight undercharges constitutes an unreasonable practice);

*see Reiter v. Cooper,* —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (implicitly affirming applicability of primary jurisdiction doctrine to rate unreasonableness claims); *Western Pac. R.R.,* 352 U.S. at 62–70, 77 S.Ct. at 164–168 (indicating that the ICC had primary jurisdiction to determine whether filed rates are reasonable); *Atlantis Express, Inc. v. Standard Transportation Services, Inc.,* 955 F.2d 529, 537 (8th Cir.1992) (citing *Western Pac. R.R.* for same proposition).

■ Under the Primary Jurisdiction doctrine, a court may refer an issue or issues to an administrative agency while retaining jurisdiction over the case or dismissing it without prejudice. *Reiter v. Cooper,* —— U.S. at ——, 113 S.Ct. at 1220. While the issue is not entirely resolved, some courts have required that before a district court refers an issue to the ICC under the doctrine of Primary Jurisdiction, the party seeking such a referral must make a "threshold showing" justifying the referral. *See Atlantis Express, Inc.,* 955 F.2d at 537. In the opinion of the Court, Grinnell has satisfied this "threshold showing" requirement for each of its defenses.

#### 1. Contract Carriage

■ Under NRA § 8, 49 U.S.C.A. § 11101(d) (West Supp.1994), the ICC shall resolve disputes over whether, in a given circumstance or set of circumstances, a carrier that may serve as both a common carrier and as a contract carrier, acted as one or the other. Here, Grinnell has put forth sufficient evidence to justify the referral of whether, and if so when, Jones acted as a contract carrier and not a common carrier.

Grinnell has provided the Court with the affidavit of a Mr. Michael Bange, an expert on transportation issues. Bange has expressed the opinion that "all of the interstate shipments at issue in this suit were moved in contract carriage." (Bange Aff. at 8.) This conclusion is supported by the fact that all but seven of the freight bills here in issue were governed by transportation agreements bearing Jones's contract carriage number.

Given the Transportation Agreements covering eighty-five of the freight bills in this

case, there is sufficient evidence for the Court to conclude that Jones may have held itself out as a contract carrier for all of Grinnell's shipments.

Although the Plaintiff makes several arguments against a finding that it acted as a contract carrier, including the arguments that Grinnell cannot satisfy either of the statutory prerequisites for contract carriage, the Court refers this issue and Plaintiff's arguments to the ICC. Given the mandatory language of section 2(e)(2), a referral to the ICC based on the evidence presented is justified. *See Jones Truck Lines, Inc. v. Communications Supply Serv. Ass'n,* 840 F.Supp. 82 (E.D.Ark.1993); *Jones Truck Lines, Inc. v. Ardco, Inc.,* No. 93–C–2265, slip op., 1993 WL 339096 (N.D.Ill. Aug. 30, 1993).

### 2. Unreasonable Practice and/or Unreasonable Rate

In the opinion of the Court, Mr. Bange's affidavit supports the referral of the unreasonable practice and unreasonable rate issues to the ICC.

 To show that Jones's practice is "unreasonable" under the NRA, Grinnell must show that the carrier is no longer operating, that the service at issue took place before September 30, 1990, that Jones offered a transportation rate other than that on file, that Grinnell relied on the offered rate, that Jones did not timely file with the ICC a tariff containing the offered rate or conduct the transaction on contract carriage, that the offered rate was billed and collected, and that Jones now seeks additional payment based on a rate contained in a filed tariff. *See* NRA § 2(e)(2)(A)–(E). In the opinion of the Court, given that Jones takes the position that the transportation was done in its capacity as a common carrier, each of these requirements is sufficiently supported by the evidence to justify a referral of the "unreasonable practice" issue.

 Similarly, referral of the rate unreasonableness issue is also justified. Bange's affidavit shows that competing carriers available to Grinnell charged rates at levels similar to those originally charged by Jones. All of the percentage discounts available to interstate shipments like Grinnell's fell within a range of 40% to 55% percent, a range very similar to that offered Grinnell by Jones. Additionally, Bange indicates that the rate offered Grinnell was not unusual, or out of line with the rates offered Jones's other customers.

 Plaintiff contests each of the conclusions asserted by Defendant, providing the testimony of its own expert witness in favor of its reasonable rates, and pointing out that the Defendant has failed to provide detailed evidence as to the maximum reasonable rate. However, this is not a motion for summary judgment which the Defendant must prove before a referral to the ICC is justified. A threshold showing may be satisfied by the introduction of rates offered by "healthy" carriers. *Atlantis Express, Inc.,* 955 F.2d at 537. When a shipper shows that the plaintiff carrier's negotiated rates were consistent with the prevailing market rate, and its filed rates were above the market rate, such evidence justifies a referral to the ICC for a more detailed inquiry. *See id.* Grinnell's evidence, while not as detailed as it might be, sufficiently satisfies the applicable "threshold showing" requirement to justify referral.

In the opinion of the Court, while not necessarily precluding a finding of unreasonableness, this evidence is sufficient to support a referral to the ICC.

### 3. Conclusion

 In the opinion of the Court, Grinnell has made a "threshold showing" sufficient to justify the referral of each of the above mentioned issues. Plaintiff has indicated that, if the Court were to consider ordering referral, that it refrain from doing so based on the "futility" of such a referral. The Plaintiff also proposes that the Court grant its motion for summary judgment prior to any referral. These requests are denied as inconsistent with the letter and spirit of the NRA. There need only be one judgment in this case and any judgment to which Jones may be entitled might be entirely offset by a judgment on Grinnell's counterclaims and defenses. Having once agreed to ship Grinnell's goods at a "discount" rate and now seeking to renege on

that agreement, Jones can wait for the ICC's conclusions.

## III. CONCLUSION

For the foregoing reasons, Grinnell's motion for a stay and referral is granted. This case is hereby stayed and each of the above discussed issues is referred to the ICC.