**NORTH PENN TRANSFER, INC., Plaintiff,**

v.

**STATIONERS DISTRIBUTING COMPANY, Defendant.**

No. 94 C 796.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 20, 1994.

Christine Renee Haddad, Lawrence M. Liebman and Timothy F. Eddy, Eddy & Liebman, Chicago, IL, for North Penn Transfer, Inc.

Sara Elwood Cook and Ellen Debra Holzman, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, for Stationers Distributing Co.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is Plaintiff Northern Penn Transfer's Motion for Summary Judgment and Defendant Stationers Distributing Company's Motion for Stay and Referral to the Interstate Commerce Commission and The Maryland Public Service Commission.

## BACKGROUND

Plaintiff Northern Penn Transfer ("Plaintiff"), a bankrupt motor carrier, has brought an action for collection of alleged freight "undercharges." (Complaint at ¶¶ 1, 4.) Plaintiff was a licensed motor common carrier which filed rates with the ICC or was a participant in rates tariffs filed by others with the ICC. (Plaintiff's Rule 12(m) Statement at ¶¶ 3, 4; Defendant's Rule 12(n) Statement at ¶¶ 3, 4.) Plaintiff's claim arises from transportation services performed by Plaintiff for Defendant subject to the provisions of the Interstate Commerce Act, 49 U.S.C.A. §§ 10101–11901 (West Supp.1992). Plaintiff seeks damages in the amount of $13,518.36 plus interest which is the difference between freight charges billed by Plaintiff, which were fully paid by Defendant, and the applicable rates filed with the Interstate Commerce Commission ("ICC"). Complaint at ¶¶ 5, 6, 7.

Attached to the Plaintiff's Complaint as Exhibit A is a list of 582 alleged "balance due" bills. Most of the "balance due" bills concern less-than-truckload shipments of "FAK" miscellaneous office supplies from Defendant's facilities in Jessup, Maryland to various points in New Jersey, Pennsylvania, Maryland, New York, Delaware, Virginia and the District of Columbia. Other "balance due" bills concern less-than-truckload shipments of items such as file cabinets, paper, office supplies, lamps or folding tables to Jessup, Maryland from Pennsylvania, Delaware, Maryland and New York. The bill dates range from February 10, 1989 to January 2, 1990. (Plaintiff's Exhibit A–1.)

For the most part, the undercharges sought by Plaintiff are based on the auditors' determination that shippers discount provision, ICC NOPT 601–A Item 4450.8 did not apply on minimum charge shipments until August 7, 1989 and since many of the bills were dated prior to August 7, 1989, the shipments must be rerated at the proper tariff minimum charge as per ICC MAC 500 and ICC MAC 110 Item 610. (Affidavit of Charles Shinn at 4.) Other "balance due" bills are based on the erroneous application of shippers discount provisions ICC NOPT 601–A Item 4450.7 and 4450.8 to *inbound*

shipments arriving at Jessup, Maryland. *Id.* at 9.

In its Motion for Summary Judgment, Plaintiff asserts that, based on the "filed rate doctrine" and the Supreme Court's recent decision in *Reiter v. Cooper*, —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), it is entitled to collect the difference between freight charges billed by Plaintiff and the applicable rates filed with the ICC in addition to pre-judgement interest on such undercharges. Defendant responds that Plaintiff is not entitled to judgment as a matter of law because Plaintiff's attempt to collect the undercharges is subject to the unreasonable practices defense, as established by the Negotiated Rates Act of 1993, P.L. 103–180, 107 Stat. 2044, amending Title 49 of the United States Code, and because the tariff rates sought by Plaintiff are unreasonable. Defendant argues further that its defenses should be referred to the ICC under the Negotiated Rates Act of 1993 (hereinafter referred to as the "NRA") and the doctrine of primary jurisdiction.

Plaintiff dismisses Defendant's argument contending that, as the NRA does not apply to the case at hand, thus Defendant cannot defend against Plaintiff's filed rate action by charging unreasonable practices. Furthermore, Plaintiff asserts that the Supreme Court's opinion in *Reiter* establishes that there is no unreasonable rate defense to a filed rate action. Thus, Plaintiff concludes that, as Defendant's defenses are unsustainable as a matter of law, Plaintiff is entitled to judgment.

## ANALYSIS

### *Unreasonable Practice Defense*

This case follows a familiar pattern. A motor carrier and a shipper negotiate rates which are lower than the tariff rates which the Interstate Commerce Act requires the carrier to "publish and file" with the ICC, 49 U.S.C. § 10762. The carrier fails to "publish and file." After the shipments are delivered and paid for, the carrier goes bankrupt and its trustee in bankruptcy sues the shipper for the difference between the negotiated rates and the filed rates. *See Reiter,* —— U.S. at ——, 113 S.Ct. at 1216. The trustee argues

266

that the rate filed with the ICC governs the legal relationship between the carrier and the shipper and that deviation from the filed rate is not permitted. The shipper usually defends against the carrier's undercharge action by arguing (1) that the carrier's attempt to collect more than the agreed upon rate is an "unreasonable practice" proscribed by the Act, *see* 49 U.S.C. § 10701(a) and (2) that the filed rates are unlawful because they are unreasonably high. *Reiter*, —— U.S. at ——, 113 S.Ct. at 1216. In 1989, the ICC announced a policy approving the "unreasonable practice" defense asserted by shippers. *Id.* (citing *NIT:-Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates*, 5 I.C.C.2d 623 (1989)). However, the Supreme Court invalidated the ICC's policy in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 133, 110 S.Ct. 2759, 2769, 111 L.Ed.2d 94 (1990), holding that it would "rende[r] nugatory" the specific command of § 10761 that the carrier charge the shipper the filed rate.

In response to the Supreme Court's decision in *Maislin*, Congress passed the Negotiated Rates Act. Section 2(e) of the NRA states:

(e) ALTERNATIVE PROCEDURES FOR RESOLVING DISPUTES

(1) GENERAL RULE.—For purposes of section 10701 of title 49, United States Code, it shall be an unreasonable practice for a motor carrier of property ... providing transportation subject to the jurisdiction of the Commission ... to attempt to charge or to charge for a transportation service provided before September 30, 1990, the difference between the applicable rate that is lawfully in effect pursuant to a tariff that is filed [with the ICC] ... and the negotiated rate for such transportation service if the carrier or freight forwarder is no longer transporting property ...

(2) JURISDICTION OF COMMISSION.—The Commission shall have jurisdiction to make a determination of whether or not attempting to charge or the charging of a rate by a motor carrier or freight forwarder ... is an unreasonable practice under paragraph (1). If the Commission determines that attempting to charge or

the charging of the rate is an unreasonable practice under paragraph (1), the carrier [or] freight forwarder ... may not collect the difference described in paragraph (1) between the applicable rate and the negotiated rate for the transportation service....

(3) STAY OF ADDITIONAL COMPENSATION.—When a person proceeds under this subsection to challenge the reasonableness of the practice of a motor carrier [or] freight forwarder ... described in paragraph (1) to attempt to charge or to charge the difference described in paragraph (1) between the applicable rate and the negotiated rate for the transportation service in addition to those charges already billed and collected for the transportation service, the person shall not have to pay any additional compensation to the carrier [or] freight forwarder ... until the Commission has made a determination as to the reasonableness of the practice as applied to the freight of the person against whom the claim is made.

Negotiated Rates Act of 1993, P.L. 103–180 § 2(e)(1), (2) and (3), 107 Stat. 2047.

It is undisputed that Plaintiff is attempting to collect from the Defendant the difference between the alleged applicable rate filed with the ICC and the negotiated rate for transportation services provided prior to September 30, 1990. (*See* Complaint at ¶¶ 4–7; Exhibit A–1 which lists bill dates ranging from February 10, 1989 to January 2, 1990.) It is further undisputed that Plaintiff, as a bankrupt motor carrier, is no longer transporting property. Given these undisputed facts and the plain language of NRA Section 2(e), this Court concludes that Defendant can assert an unreasonable practices defense to Plaintiff's filed rate claim and that Defendant is entitled to a stay until the ICC determines whether Plaintiff's attempt to collect undercharges is an unreasonable practice.

■ Despite the plain language of the NRA, which validates the viability of an unreasonable practices defense, Plaintiff, relying on Section 9 of the NRA and Section 541(c)(1) of the Bankruptcy Code, asserts that the NRA is not applicable to the case at

hand. Section 9 of the NRA states as follows:

### LIMITATION ON STATUTORY CONSTRUCTION

Nothing in this Act ... shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; title 28, relating to the jurisdiction of the courts of the United States ...

Negotiated Rate Act of 1993, P.L. 103–180 § 9, 107 Stat. 2053. Section 541(c)(1) of the Bankruptcy Code provides:

(c)(1) ... an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an ... applicable nonbankruptcy law—

. . . . .

(B) that is conditioned on the insolvency or financial condition of the debtor ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1). Section 541(c)(1) prevents otherwise applicable nonbankruptcy laws from causing a forfeiture of the debtor's property based on the debtor's insolvency or financial condition. Plaintiff argues that the NRA is an "applicable nonbankruptcy law" under Section 541(c)(1) because it "is conditioned on the insolvency or financial condition of the debtor" and that because it "effects a forfeiture, modification or termination of the debtor's interest in property." Given Section 9 of the NRA, Plaintiff argues that Section 541(c)(1) prevents the application of the NRA to bankrupt carriers and thus to the present case. Plaintiff cites one case in support of its position. *See In re Bulldog Trucking, Inc.,* No. 92–3100, slip op. (Bankr.W.D.N.C. Feb. 17, 1994).[1]

However, this Court has previously rejected the reasoning of *In re Bulldog Trucking* and Plaintiff's argument that, given Section 9 of the NRA, Section 541(c)(1) prevents the application of the NRA to the bankrupt carriers. *See Jones Truck Lines, Inc. v. Grinnell Corporation,* 167 B.R. 488, 493 (N.D.Ill.1994). In *Jones Truck Lines,* this Court stated,

After a review of the plain language of the NRA and its legislative history, it is the opinion of the Court that Congress intended the NRA to apply to bankrupt debtors. To hold otherwise would be to sanction the absurd position that Congress only intended the statute to apply to carriers that are "no longer transporting property," 49 U.S.C.A. § 10701(f)(1)(A) (West Supp. 1994), but have not filed for bankruptcy. Moreover, Plaintiff's position rests on its showing that the NRA is "conditioned on the insolvency or financial condition of the debtor." 11 U.S.C. § 541(c)(1)(B) (1988). In fact, the NRA is conditioned on a carrier's "no longer transporting property." 49 U.S.C. § 10701(f)(1)(A) (West Supp.1994). The two conditions are not the same. While a carrier's "no longer transporting property" may indicate that the carrier is in financial difficulty, such is not necessary. Similarly, a carrier that is insolvent or in poor financial condition may still be transporting. In the former case, the NRA would apply. In the latter, it would not. The Court thus rejects Plaintiff's contention that its status as a bankrupt debtor precludes the application of the NRA.

*Id.* Plaintiff has given this Court no persuasive reason why it should depart from its previous decision in *Jones Truck Lines.* Moreover, a number of other courts have also held that the NRA is applicable to bankrupt carriers. *See Allen, Trustee for TSC Express Co. v. Spiegel, Inc. and United Pool Distribution, Incorporated,* 169 B.R. 394, 396 (N.D.Ill.1994); *Jones Truck Lines, Inc. v. Polyflex Film & Converting, Inc.,* 173 B.R. 576, 578–80 (S.D.Miss.1994); *Jones Truck Lines v. Madix Store Fixtures,* No. 3:93–CV–0925–T, 1994 WL 416154 at *2–3 (N.D.Tex., April 6, 1994); *Lewis v. H.E. Wisdom & Sons, Inc.,* No. 93–C–985, 1994 WL 110659 (N.D.Ill. Mar. 30, 1994); *Jones Truck Lines, Inc. v. Aladdin Synergetics, Inc.,* 174 B.R. 76, 80–81 and n. 9 (M.D.Tenn.1994).

■ Even if Section 541(c)(1) of the Bankruptcy Code does not prevent application of

---

**1.** Subsequently published at 173 B.R. 517 (W.D.N.C.1994).

the NRA to bankrupt carriers, Plaintiff argues that Section 2(e) of the NRA should not apply to the instant case because the claims in the instant case were pending when the NRA was enacted on December 3, 1993. Section 2(c) of the NRA states as follows:

> APPLICABILITY.—The amendments made by subsections (a) and (b) of this section shall apply to all claims pending as of the date of the enactment of this Act
> . . .

Negotiated Rates Act of 1993, P.L. 103–180 § 2(c), 107 Stat. 2047. Plaintiff contends that as Section 2(c) addresses only the application of sections (a) and (b) to the pending claims, it is inapplicable to section (e). This Court cannot agree with Plaintiff. Subsection (e) of the NRA allows defendants who are being sued for undercharges on transportation services provided before September 30, 1990, to opt out of section (a) of the NRA[2] and raise an unreasonable practices defense. As subsection (e) allows a defendant to avoid any payment of undercharges for older claims, it would be inconsistent with the reasoning of the NRA to hold that subsection (e) does not apply to claims pending on the date of the enactment of the NRA. *See Jones Truck Lines, Inc. v. Scott Fetzer Company*, 860 F.Supp. 1370, 1375–76 (E.D.Ark.1994); *Arrow Carrier Corporation, et al. v. Robertshaw Controls Co.*, Civil Action No. 93–2519, 1994 WL 411780 at *5–6 (D.N.J. June 3, 1994) (holding that pending claims under § 2(e) are covered under the NRA); *Jones Truck Lines v. Admiral Marine Co.*, 858 F.Supp. 71, 72 (E.D.La.1994) (citing H.R.Rep. No. 103–359, p. 2539 "[s]ubsection 2(c) makes the new procedures applicable to all claims pending on the date of enactment.")

As the NRA is applicable to the case at hand and as Defendant can meet the prerequisites necessary to assert an unreasonable practices defense under Section 2(e) of the NRA, Defendant is entitled to a stay of the present action until the ICC determines whether Plaintiff's attempt to collect undercharges from Defendant is an unreasonable practice. *See* Negotiated Rates Act of 1993, P.L. 103–180 § 2(e)(3), 107 Stat. 2047.

### Rate Unreasonableness

The filed rate doctrine, which requires that the filed rate be collected from the shipper, has one important caveat: the filed rate is not enforceable if the ICC finds the rate to be unreasonable. *See* 49 U.S.C. § 10701(a); *Maislin*, 497 U.S. at 128–29, 110 S.Ct. at 2767. The Interstate Commerce Act gives shippers an express cause of action against carriers for damages in the amount of the difference between the tariff rate and the rate determined to be reasonable by the ICC. *Reiter*, —— U.S. at ——, 113 S.Ct. at 1217 citing 49 U.S.C. § 11705(b)(3).

Recent Supreme Court opinions as well as opinions in this jurisdiction make it clear that the reasonableness of a filed rate is within the primary jurisdiction of the ICC. *Reiter*, —— U.S. at —— – ——, 113 S.Ct. at 1220–21; *Maislin*, 497 U.S. at 118–20, 110 S.Ct. at 2762; *Allen, Trustee for TSC Express Co. v. Spiegel, Inc. and United Pool Distribution, Incorporated*, 169 B.R. 394, 396 (N.D.Ill.1994); *Gross Common Carrier v. A.B. Dick*, 861 F.Supp. 638, 638–40 (N.D.Ill. 1993); *Jones Truck Lines v. Jiffy Prod. of America*, 834 F.Supp. 278, 280 (N.D.Ill.1993); *Lifschultz Fast Freight v. JBS Warehousing, Inc.*, 809 F.Supp. 51, 53 (N.D.Ill.1992).

The doctrine of primary jurisdiction applies to claims which are originally cognizable in the courts, and comes into play whenever enforcement of the claims requires the resolution of issues which, under a regulatory scheme, are within the special competence of an administrative agency. *Reiter*, —— U.S. at ——, 113 S.Ct. at 1220. The doctrine requires the court to stay further proceedings so as to the give the parties an opportunity to seek an administrative ruling on the relevant issues. *Id.* As the issue of reasonableness of the filed rates is contested by the parties and within the special expertise of the ICC, a stay of the present proceedings appears to be the appropriate result.

---

**2.** Subsection (a) of the NRA allows a defendant, upon a certain showing, to elect to settle the claim through payment of five to twenty percent of the undercharges allegedly owed.

■ However, Plaintiff argues that Defendant's claim that the filed rate is unreasonable should not prevent this Court from entering judgment on its undercharge claims. Relying on the Supreme Court's decision in *Reiter*, Plaintiff asserts that a claim that a filed rate is unreasonable is a counterclaim, not a defense, and thus this Court has the discretion, under Federal Rule of Civil Procedure 54(b), to enter judgment in favor of the Plaintiff on the undercharge claim and then allow the Defendant to pursue its counterclaim with the ICC.

While Plaintiff is correct in the technical sense that an unreasonable rate claim is a counterclaim, not a defense, *see* 49 U.S.C. § 11705(b)(3), and that *Reiter* holds that a district court has discretion to enter separate judgment on Plaintiff's undercharge claim, this Court holds that this is not a proper case for the entry of separate judgments under Rule 54(b).[3] In *Reiter*, the Supreme Court found,

> In the ordinary case, where a carrier is solvent and has promptly initiated suit, the equities favor separate judgment on the principal claim: referral of the unreasonable-rate issue could produce substantial delay, and tariff rates not disapproved by the ICC are legal rates, binding on both the shipper and the carrier.... The equities change, however, when the suing carrier is in bankruptcy. Indeed, we have previously held that even a "threat of insolvency" of the party seeking separate judgment is a factor weighing against referral.

—— U.S. at ——, 113 S.Ct. at 1221 (citations omitted). Clearly, Plaintiff's insolvency weighs against Plaintiff's request for separate judgments. *See, Jiffy Prod. of America*, 834 F.Supp. at 281. Although the Supreme Court noted in *Reiter* that the insolvency of the carrier is not an absolute bar to separate judgments, Plaintiff presents no persuasive evidence which would tip the balance in favor of application of Rule 54(b). There is absolutely no indication, aside from the Plaintiff's unsupported assertions, that the Defendant may become insolvent.

Additionally, Section 2(a) of the Negotiated Rates Act, amending § 10701 of Title 49 of the United States Code by adding subsection (f) thereto, suggests that staying the proceeding in this Court until the ICC determines the reasonableness of Plaintiff's filed rates is the appropriate course:

> (6) STAY OF ADDITIONAL COMPENSATION.—When a person proceeds under this section to challenge the reasonableness of the legally applicable freight rate or charges being claimed by a carrier or freight forwarder described in paragraph (1) in addition to those already billed and collected, the person shall not have to pay any additional compensation to the carrier or freight forwarder until the Commission has made a determination as to the reasonableness of the challenged rate as applied to the freight of the person against whom the claim is made.

49 U.S.C.A. 10701(f)(6) (West Supp.1994).

As an alternative course, Plaintiff requests that this Court grant judgment in its favor but allow Defendant to pay damages in to the Court pending the decision of the ICC on the issue of reasonableness. Plaintiff's alternative request must also be rejected. Such a request is clearly contrary to the language of the NRA quoted above; there is no practical difference to Defendant of being required to pay damages to Plaintiff versus into the court. *See Allen, Trustee for TSC Express Co.*, 169 B.R. at 397–98. Furthermore, as previously noted, there is no indication that the Defendant's financial stability is in jeopardy. Accordingly, this Court holds that separate judgments are not warranted in the present case.

■ Finally, this Court notes that, before referring an issue to the ICC under the doctrine of primary jurisdiction, some courts have required that the party seeking referral make a "threshold showing" that the ICC could find the filed rates unreasonable. *See Atlantis Express, Inc. v. Standard Transportation Services, Inc.*, 955 F.2d 529, 537 (8th Cir.1992). For the following reasons, the

---

3. Rule 54(b) allows a district court to enter separate final judgment on any claim or counterclaim, after making "an express determination that there is no just reason for delay." *Reiter*, —— U.S. at ——, 113 S.Ct. at 1218.

Court believes that Defendant meets this threshold showing.

General criteria which the ICC applies to determine rate reasonableness include: (a) relevant rate comparisons; (b) a carrier's proffer of a particular rate; (c) whether the rate would have moved the traffic had it been assessed at the time the shipment took place; (d) class rates for like traffic; and (e) tariff analysis. *LaSalle National Bank v. Badger Paper Mills*, No. 92 C 0546, 1993 WL 177022 *2 (N.D.Ill. May 21, 1993). Defendant attaches an affidavit of Michael Bange, an industry expert, which compares the original rates of the Plaintiff with the rates of other carriers in the same geographic area during the same time the shipments at issue were moved and such a comparison shows that other carriers offered rates equivalent to the ones Plaintiff originally charged. (Bange's Affidavit, Exhibit 1 at 16.) Bange also states that Plaintiff's Customer Sales Record, which contains a section entitled "Other Carriers Pricing," is evidence of Plaintiff's awareness of the rates and discounts available to Defendant from other competing carriers. *Id.* at 17. Plaintiff's original freight bills evidence the original rate proffered by the Plaintiff, which is substantially lower than the rate now sought. *Id.* at 19. Finally, after studying the various discount tariffs published by Plaintiff, Bange concludes that the rates which Plaintiff presently seeks would not have moved an appreciable amount of traffic during the relevant time period. *Id.* at 20–21. As Defendant meets the threshold showing of unreasonableness, staying the pending action so as to give Defendant a reasonable opportunity within which to apply to the ICC for a ruling as to the reasonableness of the filed rates is appropriate. *See LaSalle National Bank*, 1993 WL 177022 *2 (holding that evidence that (1) other carriers offered rate equivalent to that originally charged, (2) plaintiff originally proffered discount rate and (3) defendant would have selected another carrier if it knew it would have been charged the filed rate is sufficient to support referral.)

Plaintiff asserts that Defendant has failed to meet the necessary threshold showing because it has not provided detailed evidence as to the maximum reasonable rate or the reasonableness of the competitor rates. The Court disagrees. Defendant's evidence, while not as detailed as it might be, shows that the Plaintiff's rates were consistent with the prevailing market rate and that its filed rates were above the market rate, and thus is sufficient to meet the threshold showing of unreasonableness. *See Grinnell,* 167 B.R. at 494.

Based on the futility doctrine, Plaintiff makes one last argument against staying the proceedings and allowing Defendant to raise the issues of unreasonable practices and unreasonable filed rates before the ICC. Plaintiff contends that a substantial backlog of cases at the ICC may delay consideration of the issues involved in this case for years.

The futility doctrine allows a court to waive a requirement that an administrative agency initially consider an issue where application to the agency would be futile. *Lewis v. Helios Container Systems,* 844 F.Supp. 408, 410 (N.D.Ill.1993). However, Plaintiff's argument must be rejected because the futility exception generally applies to the doctrine of exhaustion of administrative remedies, not to the doctrine of primary jurisdiction. *Id.* Moreover, as this Court noted in its previous opinion, such a request is inconsistent with the letter and spirit of the NRA. *Grinnell,* 167 B.R. at 494. "There need only be one judgment in this case and any judgment to which [Plaintiff] may be entitled might be entirely offset by a judgment on [Defendant's] counterclaims and defenses." *Id.* Accordingly, the futility doctrine will not justify avoiding a stay in the present case.

*Intrastate Shipments*

Defendant notes that twenty-eight of the balance due bills show, on their face, that the shipments originated and terminated within the State of Maryland and requests that this Court dismiss such intrastate undercharge claims for lack of jurisdiction.

Even if these intrastate shipments do not fall within the confines of the Interstate Commerce Act, *see* 49 U.S.C. § 10525(a), this Court would have supplemental jurisdiction

over the Plaintiff's undercharge claims for intrastate shipments as long as they "form part of the same case or controversy under Article III of the United States Constitution," as those claims within the original jurisdiction of the Court. 28 U.S.C. § 1367(a). Section 1367(c) permits a district court to decline supplemental jurisdiction over a claim if a claim raises a novel or complex issue of state law. 28 U.S.C. § 1367(c). However, this Court cannot tell whether § 1367(c) is applicable to the present case because Plaintiff does not indicate on what state law it bases its intrastate undercharge claims. Plaintiff's Complaint merely states "this cause of action arises under 49 U.S.C. § 1761(a) *and/or consistent with applicable intrastate law provisions.*" (Complaint at ¶ 2.) Accordingly, at this stage the Court will not dismiss Plaintiff's intrastate undercharge claims for lack of jurisdiction. As Plaintiff's Complaint does not specify under what state law it proceeds, this Court must also reject Defendant's invitation to refer the intrastate undercharge claims to the Maryland Public Service Commission under the doctrine of primary jurisdiction. It is impossible to tell whether Plaintiff's state claims require resolution of issues which are within the special competence of an administrative body.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied without prejudice. Defendant's Motion for Stay and Referral of the interstate undercharge claims to the Interstate Commerce Commission is granted. Defendant's Motion for Stay and Referral of the intrastate undercharge claims to the Maryland Public Service Commission is denied without prejudice. This case is hereby stayed so as to give Defendant a reasonable opportunity within which to apply to the ICC for a ruling as to its unreasonable practices defense and the reasonableness of the filed rates.