**JONES TRUCK LINES, INC., Debtor–In–Possession, Plaintiff,**

**v.**

**FRIGID FLUID COMPANY, Defendant.**

**No. 93 C 4091.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 8, 1994.

Lawrence M. Liebman, Timothy F. Eddy, Eddy & Liebman, Chicago, IL, for plaintiff.

Sara Elwood Cook, Christine Louise Olson, Ellen Debra Holzman, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Jones Truck Lines, Inc., a debtor-in-possession, brought this suit against defendant Frigid Fluid Co. to recover $4,235.27 in alleged freight undercharges plus interest and costs. This matter is currently before the court on defendant's motion for stay and referral to the Interstate Commerce Commission ("ICC"). For the reasons stated below, defendant's motion for stay and referral to the ICC is granted.

### BACKGROUND

Plaintiff, a motor carrier, provided freight services to defendant pursuant to a written contract. Plaintiff billed defendant for its services in accordance with the terms of the contract and defendant paid the bills in full. Plaintiff later determined that in its opinion defendant was not entitled to the discount rates defendant received in its original freight bills, and billed defendant for the difference between the rate filed with the ICC and the discounted rate from the contract that defendant already paid.

Defendant alleges a number of affirmative defenses including contract carriage and rate reasonableness and moves for referral of this case to the ICC so that the ICC may exercise its primary jurisdiction pursuant to the Interstate Commerce Act to decide: 1) whether the freight services provided by plaintiff were contract carriage or common carriage; and 2) whether plaintiff's common carriage rates were reasonable.

**1.** Section 10102(15)(B) defines a motor contract carrier as:

a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—
(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or

### ANALYSIS

■ "The ICC regulates interstate transportation by motor common carriers to ensure that rates are both reasonable and nondiscriminatory." *Maislin Indus., U.S. Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 119, 110 S.Ct. 2759, 2762, 111 L.Ed.2d 94 (1990). The Interstate Commerce Act requires common carriers to file their carriage rates with the ICC and mandates that both the carrier and the shipper adhere to these rates. 49 U.S.C. § 10101 *et seq.* If the ICC determines that the filed rate is unreasonable, however, the rate is unenforceable. 49 U.S.C. § 10701(a). In addition, the rates that a carrier charges for shipments under a contract need not be filed with the ICC as long as the carrier is acting under its statutory contract authority. *See* 49 U.S.C. § 10102(15)(B).[1]

In this case, defendant claims that the freight services provided by plaintiff were contract carriage and that the proper charge for plaintiff's services was the discounted rate from the contract not the carriage rate filed with the ICC. Alternatively, defendant argues that it should not have to pay the requested undercharges even if plaintiff was acting as a common carrier because the filed rates were unreasonable. Further, defendant contends the resolution of contract carriage and rate reasonableness issues should be referred to the ICC.

The Negotiated Rates Act of 1993 ("NRA"), Pub.L. No. 103–180, 107 Stat. 2044, recently amended certain provisions of the Interstate Commerce Act which are applicable to the jurisdictional issues in this case. Section 8 of the NRA, 49 U.S.C.A. § 11101(d) (West Supp.1994), provides that the ICC shall have jurisdiction to resolve disputes relating to whether certain transportation is provided in a motor carrier's common carrier or contract carrier capacity.[2] Section 2(e)(2)

(ii) designed to meet the distinct needs of each person.
49 U.S.C. § 10102(15)(B).

**2.** Section 8 of the NRA states as follows:

Resolution of disputes relating to contract or common carrier capacities.—If a motor carrier (other than a motor carrier providing transpor-

of the NRA, Pub.L. No. 103–180, § 2(e)(2), 107 Stat. 2047, provides that the ICC shall have jurisdiction to make a determination of whether or not the charging of a rate by a motor carrier is an unreasonable practice.

■ Numerous federal courts have referred both the contract carriage and rate reasonableness determinations to the ICC because of the ICC's regulatory expertise in this area. *See e.g., Western Transp. Co. v. Wilson & Co.*, 682 F.2d 1227, 1231–32 (7th Cir.1982) and *Atlantis Express, Inc. v. Standard Transp. Serv., Inc.*, 955 F.2d 529, 537 (8th Cir.1992).[3] In fact, this court has recently referred five very similar cases all involving Jones Truck to the ICC to resolve these issues due to the ICC's expertise in this area and ability to most efficiently resolve the dispute. *See Jones Truck Lines, Inc. v. Grinnell Corp. Anvil Prods. Div.*, 167 B.R. 488 (N.D.Ill.1994); *Jones Truck Lines, Inc. v. Kraft General Foods, Inc.*, No. 93 C 3719, 1994 WL 194292, 1994 U.S. Dist. LEXIS 5879 (N.D.Ill. May 3, 1994); *Jones Truck Lines, Inc. v. Water Treatment Services, LTD.*, 839 F.Supp. 548 (N.D.Ill.1993); *Jones Truck Lines, Inc. v. Jiffy Prods. of America*, 834 F.Supp. 278 (N.D.Ill.1993) and *Jones Truck Lines, Inc. v. Ardco, Inc.*, No. 93 C 2265, 1993 WL 339096, 1993 U.S. Dist. LEXIS 12008 (N.D.Ill. Aug. 26, 1993).[4]

Despite the explicit provisions of the NRA regarding the jurisdiction of the ICC over the issues of contract carriage and reasonableness, plaintiff argues that § 541(c)(1) of the United States Bankruptcy Code, 11 U.S.C. § 541(c)(1), conflicts with the jurisdictional provisions of the NRA and therefore prevents the referral of these issues to the ICC.

Section 541(c)(1) provides in relevant part: [A]n interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an ... applicable nonbankruptcy law—

(A) that restrict or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor..and that affects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1). Plaintiff argues that because it is a chapter 11 debtor under the jurisdiction of the United States Bankruptcy Court the Bankruptcy Court maintains jurisdiction over the causes of action on file by the debtor and that § 541(c)(1) prevents the application of the jurisdictional provisions of the NRA.

The court rejects plaintiff's argument that its status as a bankrupt debtor prevents the application of the NRA. Numerous courts which `addressed this issue have not only interpreted the NRA to apply to bankrupt carriers, but have found that Congress specifically designed the NRA to solve the problems caused by the explosion of carrier undercharge litigation brought by bankrupt carriers. *See e.g., Jones Truck Lines, Inc. v. Grinnell Corp.*, 167 B.R. 488, 492–93 (N.D.Ill. 1994) (Court held that Congress intended the NRA to apply to bankrupt debtors.); *Lewis v. H.E. Wisdom & Sons*, No. 93 C 0985, 1994 WL 110659, *4–5, 1994 U.S.Dist. LEXIS 3962, at *16–19 (N.D.Ill. Mar. 30, 1994)

---

tation of household goods) subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title has authority to provide transportation as both a motor common carrier and a motor contract carrier and a dispute arises as to whether certain transportation is provided in its common carrier or contract carrier capacity and the parties are not able to resolve the dispute consensually, the Commission shall have jurisdiction to, and shall, resolve the dispute.

49 U.S.C.A. § 11101(d) (West Supp.1994).

**3.** *See also, Defendant's Memorandum In Support Of Its Motion For Stay*, Appendix 5 for a list of federal court referrals of these issues to the ICC.

**4.** Some courts have required the party seeking a referral of the reasonableness issue to the ICC to make a threshold showing that the filed rates are unreasonable. *See Atlantis Express*, 955 F.2d at 537. While the Seventh Circuit does not appear to have explicitly adopted this requirement, the court nevertheless finds that defendant has satisfied this threshold showing. Defendant has submitted an affidavit of Michael Bange, a transportation industry expert, who states that plaintiff's filed rates are nearly double the amount defendant was originally billed by plaintiff. Mr. Bange further states that the contract rates were consistent with the rates charged by other carriers. *See Affidavit In Support Of Defendant's Motion For Stay.*

(Court agreed with the reasoning of other federal courts that clear intent of Congress is to have the NRA apply to bankrupt carriers.); *Jones Truck Lines, Inc. v. Alliance Rubber Co.,* 166 B.R. 691, 691–93 (W.D.Ark. 1994) (Court concluded after reviewing the legislative history of the NRA that Congress passed the NRA in response to overcharge claims made by bankrupt carriers.).

■ This court agrees with the reasoning of these federal courts and finds that one of the main purposes of the NRA was to remedy the litigation problems caused by lawsuits brought by bankrupt carriers by establishing a statutory procedure for resolving these disputes. The NRA's legislative history and the statute's plain language make it clear to the court that Congress intended the statute to apply to bankrupt carriers.[5] As one district court recently pointed out, Congress expressly stated that the NRA is designed to address claims asserted by " 'the trustees of bankrupt trucking companies that had negotiated [contract] rates' and 'are now suing shippers for the difference [between the filed rate and the contract rate].' " *Jones Truck Lines, Inc. v. Alliance Rubber Co.,* 166 B.R. 691, 693 (W.D.Ark.1994) (quoting 139 Cong. Rec. § 16183–01, § 16186).

■ The court therefore finds that the resolution of contract carriage and rate reasonableness issues should be referred to the ICC. Because there is no direct mechanism through which the court can order a referral to the ICC, however, the proper procedure is to order defendant to promptly file these issues with the ICC for a determination. *See Western Transp.,* 682 F.2d at 1231. In addition, neither party will be prejudiced by a stay of this action pending the review of the ICC.

### CONCLUSION

For the reasons stated above, defendant's motion for stay and referral to the Interstate Commerce Commission is GRANTED. The court orders this case be placed on inactive status with leave to reinstate within thirty days of the ruling by the Interstate Commerce Commission if any further proceedings are necessary.

---

5. In fact the application of the provisions of the NRA are conditioned on the fact that the carrier is "no longer transporting property," which may indicate a Congressional intent to specifically target lawsuits filed by bankrupt carriers. 49 U.S.C.A. § 10701(f)(1)(A) (West Supp.1994).