**JONES TRUCK LINES, INC., Debtor-in-Possession, Plaintiff,**

v.

**REPUBLIC TOBACCO, INC., n/k/a DRL Enterprises, Inc., Defendant.**

Adv. No. 93 A 00910.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 2, 1995.

---

Timothy F. Eddy, Lawrence M. Liebman, Eddy & Liebman, Chicago, IL, for plaintiff.

Christine L. Olson, Sarah Cook, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, for defendant.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on cross motions for summary judgment. Jones Truck Lines, Inc. ("Plaintiff" or "Jones"), seeks to recover purported freight undercharges relating to transportation services provided for Republic Tobacco, Inc., n/k/a DRL Enterprises, Inc., ("Defendant" or "Republic"), between October 1988 and January 1989, under the Interstate Commerce Act, 49 U.S.C. §§ 10101–11917. In support of its motion for summary judgment, Defendant relies on section 2(a)[1] of the Negotiated Rates Act of 1993 ("NRA"), Pub.L. No. 103–180, 107 Stat. 2044 (1993), which exempts small businesses from liability for freight undercharge claims. 49 U.S.C.A. 10701(f)(9). In response, Plaintiff argues that the NRA does not apply to bankrupt motor carriers, and even if the NRA does so apply, it is inapplicable in this case because the Plaintiff's claims and bankruptcy filing arose prior to the enactment of the NRA. Having considered the arguments, pleadings and exhibits, the Court finds that the NRA does apply to Plaintiff's claims and, therefore, Jones is precluded from recovering the freight undercharges from Republic pursuant to the small business exception of NRA § 2(a). As set forth in the Court's order, summary judgment is granted in favor of Republic.

## *BACKGROUND*

Jones formerly was a licensed motor common carrier under the Interstate Commerce Act ("ICA"), 49 U.S.C. § 10102(4). Jones is no longer transporting property. Republic is a wholesale distributor of tobacco and tobacco products who engaged Jones to transport goods to various consignees from October 1988 through January 1989. Jones filed a petition for Chapter 11 relief on July 9, 1991, in the United States Bankruptcy Court for

the Western District of Arkansas, Fayetteville Division, Case No. 91–15475–M. On June 22, 1993, Jones filed a complaint in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 93 C 3724. The case was referred to this Court in accordance with Northern District of Illinois General Rule 2.33(A) on July 16, 1993. Relying on the ICA, 49 U.S.C. §§ 10101–11917, Plaintiff sought to recover purported freight undercharges relating to the transportation services provided for Republic. In response, Defendant filed a motion for stay of the proceedings and referral to the Interstate Commerce Commission ("ICC") to determine the reasonableness of Plaintiff's shipping rates. In its motion for stay of proceedings, Defendant argued that: (1) the original freight charges paid by Republic were in accordance with Jones' lawfully filed tariff rates; and (2) the undiscounted class rates sought by Jones were unreasonable. Jones subsequently filed a motion for summary judgment, contending that under the "filed rates doctrine" of the ICA, common carriers are required to charge and collect only those rates that are set forth in tariffs on file with the ICC. Accordingly, Jones argues that because the tariff rates paid by Republic for services rendered were less than the class rate tariffs filed by Jones, Jones is entitled to recover these "undercharges" in accordance with the ICA, 49 U.S.C. § 10761(a). Jones seeks $6,186.96 in tariff undercharges from Republic plus prejudgment interest and costs.

On January 26, 1994, this Court entered an Order granting the Defendant's motion to stay the action pending a determination by the ICC regarding the reasonableness of Plaintiff's filed tariff rates. The ICC subsequently established a procedural schedule in the proceeding to determine rate reasonableness. *Republic Tobacco n/k/a DRL Enterprises, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Jones Truck Lines, Inc.*, 1994 WL 172332 (I.C.C. May 9, 1994). Republic then filed a motion for summary judgment with this Court on July 21, 1994, requesting that the ICC stay

---

**1.** Section 2(a) of the Negotiated Rates Act is codified at 49 U.S.C. § 10701(f).

its proceeding pending dismissal of the adversary proceeding in this Court, which the ICC granted. *See Republic Tobacco n/k/a DRL Enterprises, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Jones Truck Lines, Inc.,* 1994 WL 457121 (I.C.C. August 25, 1994). In response, Jones filed a cross-motion for summary judgment.

In the motion for summary judgment currently before the Court, Republic asserts that the Negotiated Rates Act of 1993 amends the filed rate doctrine and provides for various forms of relief for shippers who have been subjected to freight undercharge claims. Specifically, Republic relies on section 2(a) of the NRA, 49 U.S.C. § 10701(f)(9), which exempts small businesses from liability for tariff undercharges.

Jones, on the other hand, insists that the NRA does not apply to bankrupt motor carriers because it deprives the bankruptcy estate of an interest in property in violation of Bankruptcy Code § 541. 11 U.S.C. § 541. Alternatively, Jones claims that even if the NRA does apply in bankruptcy cases, it does not apply in this particular case because Jones' claims arose before enactment of the NRA.

### JURISDICTION

This matter was initially assigned to the Honorable George W. Lindberg. On June 23, 1993, Judge Lindberg transferred the case and ordered the Clerk of the District Court to transmit the entire court file to the Clerk of the United States Bankruptcy Court for the Northern District of Illinois. This Court's jurisdiction derives from 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois.

### STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rule of Civil Procedure, applicable to adversary proceedings within bankruptcy cases by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Carroll v. Acme–Cleveland Corp.,* 955 F.2d 1107, 1114 (7th Cir.1992).

■ Summary judgment is proper if the pleadings, depositions, answers on file, together with affidavits, if any, show that no genuine issue of material fact exists. *See* Fed.R.Bankr.P. 7056, incorporating Fed. R.Civ.P. 56(c); *Donald v. Polk County,* 836 F.2d 376, 378–79 (7th Cir.1988). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2501, 91 L.Ed.2d 202 (1986). The moving party has the burden to show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Matter of Chicago, Missouri & Western Ry. Co.,* 156 B.R. 567 (Bankr.N.D.Ill.1993). This burden is met when the record, as a whole, does not lead a rational trier of fact to find for the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.1987), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

■ Once the movant makes a prima facie showing that it is entitled to judgment as a matter of law, the respondent must show that there is a genuine issue and may not rest on mere allegations or denials in its pleadings. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Matsushita,* 475 U.S. at 587,

106 S.Ct. at 1356. All reasonable inferences that may be drawn from the underlying facts are viewed in the light most favorable to the respondent. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. at 1356; *Karazanos v. Navistar Int'l. Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991).

## CROSS MOTIONS FOR SUMMARY JUDGMENT

■ When both parties seek summary judgment, that does not by itself indicate that there are no genuine issues of material fact. The Court must rule on each motion separately, utilizing applicable standards to determine whether summary judgment would be appropriate. *ITT Indus. Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987); *In re Woodstock Associates I, Inc.,* 120 B.R. 436, 442 (Bankr.N.D.Ill. 1990). The Court may deny both motions if both parties fail to meet their burden. *Wolf v. Maryland Casualty Co.,* 617 F.Supp. 456, 458 (S.D.Ill.1985).

## DISCUSSION

### I. The Negotiated Rates Act of 1993

The Interstate Commerce Act, 49 U.S.C. §§ 10101–11917, requires motor common carriers to publish their rates in tariffs filed with the ICC, 49 U.S.C. § 10762, and prohibits both carriers and shippers from deviating from those rates, 49 U.S.C. § 10761. Failure to charge or pay the filed rate may result in civil or criminal sanctions. *Security Services, Inc. v. Kmart Corporation,* — U.S. —, —, 114 S.Ct. 1702, 1706, 128 L.Ed.2d 433 (1994); *see* 49 U.S.C. §§ 11902–11904. The purpose behind the ICA is "to ensure that rates are both reasonable and nondiscriminatory." *Maislin Industries, U.S., Inc.*

*v. Primary Steel, Inc.,* 497 U.S. 116, 119, 110 S.Ct. 2759, 2762, 111 L.Ed.2d 94 (1990); *see* 49 U.S.C. § 10101(a); 49 U.S.C. § 10701(a); 49 U.S.C. § 10741(a), (b).

■ Motor carriers began to deviate from the filed tariff rates, however, after the enactment of the Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (1980), which substantially deregulated the trucking industry. In an effort to gain an advantage within the motor carrier industry, common carriers began to negotiate rates with shippers which were lower than the rates on file with the ICC. *See Reiter v. Cooper,* — U.S. —, —, 113 S.Ct. 1213, 1216, 122 L.Ed.2d 604 (1993). The heightened competition resulting from the partial deregulation forced large numbers of carriers to file for bankruptcy. Once a carrier filed for bankruptcy, the trustee generally would seek to enforce the "filed rate doctrine" under the ICA and, much to the dismay of the shipping industry, pursue actions to collect the difference between the filed rate and the negotiated rate (the "undercharge"). *See Interstate Commerce Comm'n v. Transcon Lines,* — U.S. —, —, 115 S.Ct. 689, 692, 130 L.Ed.2d 562 (1995).

In response to the cries for relief by shippers, the ICC implemented a "negotiated rates" policy, wherein the ICC departed from a strict adherence to the filed rate doctrine and instead evaluated the circumstances surrounding the rate negotiated between the carrier and the shipper to determine whether it was reasonable. In two cases commonly referred to as *Negotiated Rates I* [2] and *Negotiated Rates II,* [3] the ICC established the "unreasonable practice" defense to strict adherence to the filed rate doctrine. [4] The

**2.** *Nat'l Indus. Transp. League—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates,* (Negotiated Rates I), 3 I.C.C.2d 99 (1986).

**3.** *Nat'l Indus. Transp. League—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates,* (Negotiated Rates II), 5 I.C.C.2d 623 (1989).

**4.** A version of the "unreasonable practice" defense was subsequently codified in section 2(e)(2) of the Negotiated Rates Act which partially reads:

The Commission shall have jurisdiction to make a determination of whether or not attempting to charge or the charging of a rate by a motor carrier or freight forwarder or party representing a motor carrier or freight forwarder is an unreasonable practice under paragraph (1). If the Commission determines that attempting to charge or the charging of the rate is an unreasonable practice under paragraph (1), the carrier, freight forwarder, or party may not collect the difference described in paragraph (1) between the applica-

ICC determined that it would find the application of filed rates unreasonable, and thus enforce the negotiated rates, when the shipper and the carrier have engaged in "a course of conduct consisting of: (1) negotiating a rate; (2) agreeing to a rate that the shipper reasonably relies upon as being lawfully filed; (3) failing, either willfully or otherwise, to publish the rate; (4) billing and accepting payment at the negotiated rate for (sometimes) numerous shipments; and (5) then demanding additional payments at higher rates." *Negotiated Rates II,* 5 I.C.C.2d 623, 628 n. 11 (1989); *see also Negotiated Rates I,* 3 I.C.C.2d 99 (1986).

■ Despite the ICC's departure from the filed rate doctrine, the Supreme Court has consistently held that the filed rate alone governs the legal rights of a shipper against a carrier, and that the ICA forbids equitable defenses to collection of the filed tariff. *See Transcon,* ── U.S. at ──────, 115 S.Ct. at 691–92; *Reiter,* ── U.S. at ──, 113 S.Ct. at 1216; *Maislin,* 497 U.S. at 120–21, 110 S.Ct. at 2763; *Southern Pacific Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 352, 102 S.Ct. 1815, 1825, 72 L.Ed.2d 114 (1982); *Louisville & Nashville R.R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915); *accord Norwest Transp., Inc. v. Horn's Poultry, Inc.,* 23 F.3d 1151, 1153 (7th Cir.1994), *reh'g denied,* 37 F.3d 1237 (7th Cir.1994). This filed rate doctrine prohibits motor carriers from charging or collecting any tariff rate for transportation services other than the rate filed with the ICC and, accordingly, requires carriers whose rates are regulated by the ICC to collect the difference between the rate the carrier actually charged shippers and the filed rate. *Maislin,* 497 U.S. at 120, 110 S.Ct. at 2762; *Louisville & Nashville R.R.,* 237 U.S. at 97, 35 S.Ct. at 495. This requirement has withstood scrutiny by the Supreme Court, despite the fact that the rate negotiated between a shipper and carrier is an otherwise enforceable contract. *See Maislin,* 497 U.S. at 130, 110 S.Ct. at 2768. Thus, in 1990, the Supreme Court in *Maislin, supra,* reaffirmed strict application of the filed rate doctrine and determined that the secret negotiations and collections of rates lower than the filed rate is discriminatory under 49 U.S.C. § 10741, and that the negotiated rates policy is inconsistent with the ICA. *Id.* at 131, 110 S.Ct. at 2768; *accord Reiter,* ── U.S. at ──, 113 S.Ct. at 1216; *Gross Common Carrier Inc. v. A.B. Dick Co.,* 861 F.Supp. 638, 640 (N.D.Ill.1993). The filed rate is not enforceable, however, if the ICC determines that it is unreasonable. *Maislin,* 497 U.S. at 117, 110 S.Ct. at 2761; *Louisville & Nashville R.R.,* 237 U.S. at 97, 35 S.Ct. at 495.

In response to the *Maislin* decision, Congress passed the Negotiated Rates Act of 1993 ("NRA"), Pub.Law No. 103–180, 107 Stat. 2044 (enacted December 3, 1993), which amended section 10701 of the Interstate Commerce Act, 49 U.S.C. § 10701, and created certain exceptions to the filed rate doctrine. Congressional intent behind the NRA was to "alleviate the explosion of freight motor carrier undercharge litigation."[5] *Gross,* 861 F.Supp. at 640.

Under the NRA, shippers have three alternative defenses to undercharge claims. H.R.Rep. No. 103–359, 103d Cong., 1st Sess. 10 (1993) U.S.Code Cong. & Admin.News 1993, pp. 2534, 2537. First, section (g) preserves a shipper's right to challenge the reasonableness of the rate sought to be collected. Next, the "unreasonable practice" defense in section 2(e) provides that it is an unreasonable practice for a carrier to attempt to collect a rate higher than the rate negotiated for transportation services provided prior to September 30, 1990. Finally, section 2(a), 49 U.S.C. 10701(f)(9), exempts small shippers, charitable organizations, and recyclers from liability for undercharge claims. Shippers may also elect to pursue the settlement procedures provided in section 2(a), 49 U.S.C. § 10701(f)(2)–(4).

Pursuant to section 2(a) of the NRA, small businesses are exempt from liability for un-

ble rate and the negotiated rate for the transportation service.

**5.** For a detailed discussion of the Negotiated Rates Act and its impact on bankruptcy law, see

Wayne Johnson, *The Negotiated Rates Act of 1993: Congress Curtails Undercharge Litigation in Bankruptcy by Amending the Filed Rate Doctrine,* 68 Am.Bankr.L.J. 319 (Summer 1994).

dercharge claims. 49 U.S.C. § 10701(f)(9). In support of its motion for summary judgment, Republic contends that NRA § 2(a) exempts small businesses from liability for freight undercharges and, because Republic qualifies as a small business, it is thus exempt from the alleged undercharge claims. 49 U.S.C. § 10701(f)(9). Section 2(a) of the NRA, 49 U.S.C. § 10701(f)(9), provides in relevant part:

> CLAIMS INVOLVING SMALL–BUSINESS CONCERNS, CHARITABLE ORGANIZATIONS, AND RECYCLABLE MATERIALS.—Notwithstanding paragraphs (2), (3), and (4),[6] a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid—
>
> (A) if such person qualifies as a small-business concern under the Small Business Act (15 U.S.C. 631 et seq.)....

Legislative history of subparagraph (f)(9) evidences Congress' intent to exempt small businesses from liability for undercharges. House Report number 103–359 provides:

> [T]he bill declares amnesty for claims involving small shippers, charitable organizations, and recyclers. The Committee believes that these groups should not be held liable for any of the undercharged claims pending against them.

H.R.Rep. No. 103–359, 103d Cong., 1st Sess. 10 (1993) U.S. Code Cong. & Admin.News 1993, pp. 2534, 2537. Furthermore, several courts have held that the small business exemption precludes bankrupt motor carriers from collecting freight undercharges from qualifying shippers. *See, e.g., In re Lifschultz Fast Freight Corp.*, 174 B.R. 271 (N.D.Ill.1994); *Lewis v. H.E. Wisdom & Sons, Inc.*, 1994 WL 110659 (N.D.Ill. Mar. 31, 1994); *North Penn Transfer, Inc. v. Polykote Corp.*, 170 B.R. 565 (E.D.Pa.1994); *Allen v.*

*ITM, Ltd. South*, 167 B.R. 63 (M.D.N.C. 1994); *In re Best Refrigerated Express, Inc.*, 168 B.R. 978 (Bankr.D.Neb.1994).

■ The Small Business Act ("SBA") does not define a "small-business concern." *See* 15 U.S.C. § 632. The Code of Federal Regulations, 13 C.F.R. § 121.601, however, sets forth standards in the table of Standard Industrial Classification ("SIC"), for what qualifies as a small-business concern under the SBA. Defendant qualifies as a small-business concern under the SBA. (Republic Rule 12(M) Statement ¶ 3 and Republic Memorandum in Support of Defendant's Motion for Summary Judgment at 4–5). Republic is engaged in the distribution of tobacco and tobacco products. (Republic Aff., Exh. C of Defendant's Memorandum, ¶ 2). Under SIC code 5194, a business engaged in the wholesale trade of nondurable goods such as tobacco and tobacco products constitutes a small-business concern. 13 C.F.R. § 121.601. In addition, Republic has supplied an "Affidavit of Small Business Status" which certifies that during all relevant periods the company did not have more than 80 employees and, thus, Republic qualifies as a "small business" pursuant to the SBA standards set forth in 13 C.F.R. § 121.601. (Republic Aff., Exh. C of Defendant's Memorandum, ¶¶ 4 & 5). Republic's status as a small-business concern has not been challenged by Jones. Accordingly, Republic qualifies as a small-business concern under the SBA for purposes of NRA paragraph (f)(9) and, therefore, Republic is eligible for an exemption from liability from Jones' undercharge claims.

In opposition to Defendant's motion, Plaintiff Jones asserts that NRA § 9,[7] in conjunction with the anti-forfeiture provisions of Bankruptcy Code § 541(c)(1), preclude application of the exemption provisions of the NRA in bankruptcy cases and, therefore, the Trustee is under a duty to collect the undercharge claims.

---

**6.** Paragraphs (f)(2) through (f)(4) of the NRA permits a shipper who has satisfied the requirements of paragraph (f)(1) to pay only a certain percentage of the undercharge claim. The percentage the shipper must pay varies depending on the weight of the shipment, 49 U.S.C. § 10701(f)(2) & (f)(3), and whether the shipper

qualifies as a public warehouseman, 49 U.S.C. § 10701(f)(4).

**7.** Section 9 of the Negotiated Rates Act, Limitation on Statutory Construction, is not codified in the United States Code.

## II. The Negotiated Rates Act Applies To Bankrupt Motor Carriers

Bankruptcy Code § 541 provides that all legal and equitable interests of the debtor become property of the bankruptcy estate regardless of the effect of applicable non-bankruptcy law. 11 U.S.C. § 541(a), (c)(1).[8] Furthermore, section 9 of the NRA provides:

SEC. 9. LIMITATION ON STATUTORY CONSTRUCTION. Nothing in this Act ... shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; title 28, United States Code, relating to the jurisdiction of the courts of the United States (including bankruptcy courts); or the Employee Retirement Income Security Act of 1974.

Plaintiff argues that the deficiency between the filed rate and the negotiated rate, the undercharge, became property of the estate upon the filing of the bankruptcy petition pursuant to 11 U.S.C. § 541(a), and consequently, the debtor-in-possession can pursue collection thereof, 11 U.S.C. § 704, regardless that Republic qualifies as a small business. Jones contends that section 2 of the NRA is "applicable nonbankruptcy law" which causes a forfeiture, modification or termination of the debtor's interest in property in violation of Bankruptcy Code § 541(c)(1), and therefore, both NRA § 9 and 11 U.S.C. § 541(c)(1) preclude application of section 2 of the NRA to claims of motor carriers in bankruptcy.

In support of its assertion that the NRA does not apply to bankrupt motor carriers, Plaintiff relies on the recent decisions of *In re Americana Expressways, Inc.*, 172 B.R.

99 (Bankr.D.Utah 1994) and *Jones Truck Lines, Inc. v. IXL Manufacturing Co., Inc.*, 172 B.R. 602 (Bankr.W.D.Ark.1994). In *Americana*, the trustee filed two motions for summary judgment. One of the trustee's motions for summary judgment challenged the constitutionality of the NRA. The trustee's other motion for summary judgment, which is more pertinent to the case at hand, contended that the NRA does not apply to bankrupt debtors. The trustee argued that the language in section 9 of the NRA, coupled with the anti-forfeiture clauses in Bankruptcy Code §§ 541(c) and 363(*l*), make the NRA inapplicable in bankruptcy cases. 172 B.R. at 100.

The *Americana* court determined that the debtor carrier's freight undercharge claims constitute property of the bankruptcy estate under Bankruptcy Code § 541(a), and consequently, the trustee is under a duty to recover these undercharges claims. 172 B.R. at 101–02; 11 U.S.C. § 704(1). The court further recognized that NRA § 9 provides that the NRA must not limit or affect applicable bankruptcy law, stating, "[t]he intent of Section 9 is that the jurisdiction of the bankruptcy courts must not in any way be impacted by the enactment of the NRA and that application of the Bankruptcy Code must not in any way be impacted by the enactment of the NRA." *Americana*, 172 B.R. at 103. In holding that freight undercharge claims brought by a trustee in bankruptcy are unaffected by the provisions of the NRA, the court asserted:

The commencement of a case in bankruptcy creates an estate which is comprised of all of the debtor's interests both legal and

---

8. Section 541 of the Bankruptcy Code reads in pertinent part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

\* \* \* \* \* \*

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under

subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable non-bankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

equitable, wherever located and by whomever held. The debtor's causes of action to recover freight undercharges fall within the scope of 11 U.S.C. § 541(a) and constitute property of the debtor's estate.... Here, Congress made it clear that the NRA would not limit or otherwise affect application of Title 11 of the United States Code. This court interprets that language to mean that nothing in the NRA shall limit or affect the law of any bankruptcy proceeding.

*Id.* (citations omitted).

The court in *IXL Manufacturing, supra,* similarly held that the NRA is inapplicable in a bankruptcy case. In so holding, however, the court concluded that NRA § 9 does not render the NRA inapplicable, but rather relied exclusively on the anti-forfeiture provisions of Bankruptcy Code § 541(c)(1)(B). 172 B.R. at 611. In *IXL,* the plaintiff carrier sought to collect over $15,000 in underpaid tariffs. The defendant shipper alleged that it was a small business and, therefore, exempt from liability for the undercharge claims pursuant to section 2(a) of the NRA, 49 U.S.C. § 10701(f)(9). The *IXL* court determined that although NRA § 2(a) is not expressly conditioned on "the insolvency or financial condition of the debtor," 11 U.S.C. § 541(c)(1)(B), it is conditioned on a carrier's nonoperating status and, thus, implicitly contingent on the debtor's financial condition. *Id.* at 612. In its analysis the court stated:

> Even though nonoperating is not a synonym for financial condition, whether a business has ongoing operations is certainly a part of the financial condition of the business. A business's financial condition is the broader concept which necessarily includes the operating or nonoperating status of that business. To say the operating status of a business is not a financial condition of the business is to ignore reality.

*Id.*

The court in *IXL* failed to focus on the exemption provision under which the defendant in that case was relying, 49 U.S.C. § 10701(f)(9). Although the exemption provisions of NRA § 2(a), 49 U.S.C. § 10701(f)(2), (3) and (4), (settlement provisions), and NRA § 2(e), (unreasonable practice defense), are conditioned on the carrier no longer transporting property or transporting property for purposes of avoiding the application of these subsections, this condition is not found in the language of the small business exemption of NRA § 2(a), 49 U.S.C. § 10701(f)(9). Congress expressly conditioned the application of § 10701(f)(2), (3), (4) and NRA § 2(e) on the carrier's non-operating status but omitted such language from § 10701(f)(9). Under a strict interpretation of the plain language of the NRA, therefore, Congress intended to provide unconditional amnesty to small businesses from liability for undercharge claims. *See* H.R.Rep. No. 103–359, 103d Cong., 1st Sess. 10 (1993) U.S.Code Cong. & Admin.News 1993, pp. 2534, 2537. Consequently, Bankruptcy Code § 541(c)(1) does not preclude application of the small business exemption in bankruptcy cases. *See Lifschultz,* 174 B.R. at 274 & 277–78; *North Penn,* 170 B.R. at 567–68; *Best Refrigerated,* 168 B.R. at 984–85.

Assuming arguendo, however, that 49 U.S.C. § 10701(f)(9) is conditioned on the nonoperating status of the debtor, Bankruptcy Code § 541(c)(1) still would not prevent its application. As recognized, but dismissed, by the *IXL* court, the exemption provisions of the NRA are also applicable to nonoperating carriers which have not filed for bankruptcy. *See IXL,* 172 B.R. at 613. On the other hand, several provisions of the NRA would not apply to bankrupt carriers which are still transporting property. *See L. Lou Allen v. Krueger Ringier, Inc. (In re L. Lou Allen),* No. 93 A 550, 1994 WL 801527 (Bankr.N.D.Ill. filed October 24, 1994). Therefore, a shipper's election under these exemption provisions is conditional upon the cessation of the carrier's operations, independent of the carrier's insolvency or financial condition. *See North Penn,* 170 B.R. at 568; *Best Refrigerated,* 168 B.R. at 985; *see also Ardestani v. I.N.S.,* 502 U.S. 129, 135–37, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (finding that where a statute is clear on its face, its plain meaning should be obeyed). Nothing in Bankruptcy Code § 541(c)(1) prevents application of the NRA in bankruptcy cases.

In reaching its conclusion, the *IXL* court further maintained that the legislative histo-

ry of the NRA reflects Congress' intent "to prohibit trustees in bankruptcy cases from bringing undercharge actions in bankruptcy court." 172 B.R. at 613. However, the legislative history clearly reveals the opposite conclusion. Senate Report No. 103–79, 103d Cong., 1st Sess. 7 (1993) provides:

> The bill, as reported, is intended to alleviate the freight motor carrier "undercharge" litigation crisis *by establishing a statutory procedure for resolving disputes resulting from efforts by trustees for bankruptcy motor carriers,* (emphasis added).

Furthermore, Congressional Report H9593–02 (1993), is replete with statements which confirm that the NRA was specifically intended to deal with the undercharge claims brought by bankruptcy trustees. For example, the statement of Congressman Petri provides:

> I will say to my colleagues that in all my years in Congress, I have not encountered a more inequitable situation as this one where honest, hardworking companies are being gouged by overzealous bankruptcy trustees through a simple loophole in the law. . . . Today marks a historic step in the long journey to resolving this problem. The House of Representatives will finally speak on behalf of thousands of Americans held economic hostage. Let us take action and resolve this crisis once and for all by passing this legislation today.

139 Cong.Rec. H9593–02, *H9597 (1993); *see also* H.R.Rep. No. 103–359, 103d Cong., 1st Sess. 14 (1993) U.S.Code Cong. & Admin.News 1993, pp. 2534, 2541 (statement of

Robert D. Reischauer, Director, CBO) ("[The NRA] would establish a new framework for resolving undercharge claims brought on behalf of bankrupt motor carriers"); 139 Cong. Rec. E2900–01 (1993); 139 Cong.Rec. E1256–02 (1993); 139 Cong.Rec. S16183–01 (1993). The legislative history, therefore, evidences Congress' intent for the NRA specifically to apply in bankruptcy cases.

The District Court for the Northern District of Illinois recently addressed the issue of whether the NRA applies to bankrupt motor carriers in two cases, *Jones Truck Lines, Inc. v. Grinnell Corporation Anvil Products Division,* 167 B.R. 488 (N.D.Ill. 1994), and *Jones Truck Lines, Inc. v. Frigid Fluid Company,* 169 B.R. 52 (N.D.Ill.1994). The plaintiff in both *Grinnell* and *Frigid,* Jones Truck Lines, sought to recover freight undercharges from a shipper under the "filed rate doctrine." In both cases, Jones argued that 11 U.S.C. § 541(c)(1) conflicts with the NRA and, therefore, pursuant to the language of section 9 of the NRA, the Bankruptcy Code governs. *Grinnell,* 167 B.R. at 492; *Frigid,* 169 B.R. at 54. On the shippers' motions for stay of the proceedings and referral to the ICC, both the *Grinnell* and *Frigid* courts rejected the contention that the NRA does not apply to bankrupt debtors, noting that the majority of courts have also rejected this argument. *Grinnell,* 167 B.R. at 493; *Frigid,* 169 B.R. at 55.[9]

In support of its holding, the *Grinnell* court stated:

9. *See, e.g., North Penn Transfer, Inc. v. Stationers Distributing Co.,* 174 B.R. 263, 267 (N.D.Ill. 1994); *Jones Truck Lines, Inc. v. Aladdin Synergetics, Inc.,* 174 B.R. 76 (M.D.Tenn.1994); *Allen v. Spiegel, Inc.,* 169 B.R. 394, 396 (N.D.Ill.1994) (agreeing with the reasoning of other federal courts that clear intent of Congress is to have the NRA apply to bankrupt carriers); *Jones Truck Lines, Inc. v. United States Brass Corp.,* 1994 WL 395667 (N.D.Tex. April 7, 1994); *Lewis v. H.E. Wisdom & Sons,* 1994 WL 110659 (N.D.Ill. Mar. 31, 1994); *Jones Truck Lines, Inc. v. Kelly Foods, Inc.,* 1994 WL 121764 (W.D.Tenn. Jan. 14, 1994); *Jones Truck Lines, Inc. v. Admiral Marine Co.,* 858 F.Supp. 71 (E.D.La.1994); *Jones Truck Lines, Inc. v. AFCO Steel, Inc.,* 849 F.Supp. 1296 (E.D.Ark.1994); *Jones Truck Lines, Inc. v. Polyflex Film & Converting, Inc.,* 173 B.R. 576 (S.D.Miss.1994); *Allen v. ITM, Ltd. South,* 167

B.R. 63 (M.D.N.C.1994); *Jones Truck Lines, Inc. v. Alliance Rubber Co.,* 166 B.R. 691 (W.D.Ark. 1994). *See also* H.R.Rep. No. 103–359, 103d Cong., 1st Sess. 7 (1993) U.S.Code Cong. & Admin.News 1993, p. 2534; S.Rep. No. 103–79, 103d Cong., 1st Sess. 1 (1993); S.Rep. No. 102–359, 102d Cong., 2d Sess. 1 n. 17 (1992).

> *But see Cooper v. E.I. Du Pont de Nemours & Co. (In re Bulldog Trucking, Inc.),* 173 B.R. 517 (W.D.N.C.1994) (concluding that Debtor's undercharge claims became property of the estate before the NRA was enacted and, because NRA § 2 conflicts with the anti-forfeiture provisions of §§ 541(c)(1) and 363(*l*), the NRA is inapplicable to the bankruptcy estate and its Trustee); *accord Cooper v. Louisiana Pacific Corp. (In re Bulldog Trucking, Inc.),* 1993 WL 367623 (Bankr. W.D.N.C. April 1, 1993).

**1010**

After a review of the plain language of the NRA and its legislative history, it is the opinion of the Court that Congress intended the NRA to apply to bankrupt debtors. To hold otherwise would be to sanction the absurd position that Congress only intended the statute to apply to carriers that are "no longer transporting property", 49 U.S.C.A. § 10701(f)(1)(A) (West Supp. 1994), but that have not filed for bankruptcy. Moreover, Plaintiff's position rests on its showing that the NRA is "conditioned on the insolvency or financial condition of the debtor." 11 U.S.C. § 541(c)(1)(B) (1988). In fact, the NRA is conditioned on a carrier's "no longer transporting property." 49 U.S.C. § 10701(f)(1)(A) (West Supp.1994). The two conditions are not the same.

167 B.R. at 493; *see also Best Refrigerated,* 168 B.R. at 985; *Jones Truck Lines, Inc. v. Polyflex Film & Converting, Inc.,* 173 B.R. 576, 578–79 (S.D.Miss.1994); *L. Lou Allen v. ITM, Ltd.,* 167 B.R. 63, 66 (M.D.N.C.1994); H.R.Rep. No. 103–359, 103d Cong., 1st Sess. 14 (1993) U.S.Code Cong. & Admin.News 1993, pp. 2534, 2541. The *Grinnell* court thus stayed the case and referred the reasonableness of rate to the ICC. 167 B.R. at 495.

Concurrently, the *Frigid* court held that "one of the main purposes of the NRA was to remedy the litigation problems caused by lawsuits brought by bankrupt carriers by establishing a statutory procedure for resolving these disputes. The NRA's legislative history and the statute's plain language make it clear to the court that Congress intended the statute to apply to bankrupt carriers." 169 B.R. at 55. In a footnote, the *Frigid* court further noted that "the application of the provisions of the NRA are conditioned on the fact that the carrier is 'no longer transporting property,' which may indicate a Congressional intent to specifically target law-

suits filed by bankrupt carriers." 169 B.R. at 55 n. 5 (citing 49 U.S.C.A. § 10701(f)(1)(A) (West Supp.1994)). The *Frigid* court similarly stayed the case and referred it to the ICC. *Id.* at 55.

■ This Court agrees with the line of cases in this District and finds that nothing in NRA's exemption provisions conflicts with Bankruptcy Code § 541(c)(1). The Court thus holds that the NRA applies to this proceeding.

### III. Retroactive Application of the Negotiated Rates Act to Pending Claims

■ Alternatively, Jones asserts that section 2 of the NRA does not apply retroactively to the pending claims of debtors who filed for bankruptcy prior to the enactment of the NRA. The plain language of the statute negates Jones' contention. Section 2(c) of the NRA makes the small business exception applicable to "all claims pending as of the date of the enactment of this Act." [10] The statute clearly provides that the small business exception retroactively applies to pending claims and, thus, Republic is exempt from undercharge liability pursuant to the small business exception of NRA § 2(a).

### IV. The "Unreasonable Practice" Defense Versus the Small–Business Exemption

This Court recently held a hearing on February 22, 1995, to determine whether Republic had elected to pursue the "unreasonable practice" defense under NRA § 2(e)(1).[11] Section 2(e)(1) of the NRA prohibits motor carriers from attempting to collect undercharge claims for transportation services which were provided prior to September 30, 1990.[12] Furthermore, NRA § 2(e)(2) pro-

---

**10.** Section 2(c) of the Negotiated Rates Act provides:

The amendments made by subsections (a) and (b) of this section shall apply to all claims pending as of the date of the enactment of this Act and to all claims arising from transportation shipments tendered on or before the last day of the 24–month period beginning on such date of enactment.

**11.** Negotiated Rates Act § 2(e), Alternative Procedure for Resolving Disputes, is not codified in the United States Code.

**12.** Section 2(e)(1) of the NRA reads:
For purposes of section 10701 of title 49, United States Code, it shall be an unreasonable practice for a motor carrier of property, ... a freight forwarder, ... or a party representing such a carrier or freight forwarder to attempt to charge or to charge for a transportation service provided before September 30, 1990,

vides that the ICC has primary jurisdiction to determine "unreasonable practice" defense proceedings. In the instant case, the Debtor is seeking to collect the undercharged rates for transportation services provided by Republic prior to September 30, 1990, and thus, NRA § 2(e) would be applicable if Republic chose to make such an election.[13]

 The importance of determining whether Republic made an election under NRA § 2(e)(1) centers around NRA § 2(e)(5). If Republic had asserted an "unreasonable practice" defense in this proceeding, the Court would have been faced with the interesting question of whether section 2(e)(5) precludes the Defendant from alternatively asserting the small-business exemption under section 2(a). Section 2(e)(5) of the NRA provides:

> NONAPPLICABILITY OF NEGOTIATED RATE DISPUTE RESOLUTION PROCEDURE.—If a person elects to seek enforcement of paragraph (1) with respect to a rate for a transportation or service, section 10701(f) of title 49, United States Code, as added by subsection (a) of this section, shall not apply to such rate.

Although the Defendant would have a defense to Plaintiff's undercharge claims under either alternative, the ICC would have primary jurisdiction to determine whether Plaintiff's attempt to collect undercharges is an unreasonable practice, NRA § 2(e)(2), and consequently, Defendant would be entitled to a stay of the present proceedings pending such determination, NRA § 2(e)(3). Primary jurisdiction remains with the Bankruptcy Court, however, to determine the small-business exemption issue.

In light of the pleadings and testimony presented at the hearing, this Court finds that Republic did not elect to pursue an "unreasonable practice" defense under NRA § 2(e)(1), but rather had challenged the reasonableness of the rate Jones is seeking to collect. *See* 49 U.S.C. § 10701(e); *see also* NRA § 2(g). Consequently, this Court need not address the impact of NRA §§ 2(e)(1) and 2(e)(5) on the small-business exemption.

## CONCLUSION

This Court holds that Republic is exempt from liability for undercharge claims under the small business exception of the Negotiated Rates Act of 1993. The Court shall grant Republic's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

---

the difference between the applicable rate that is lawfully in effect pursuant to a tariff that is filed in accordance with chapter 107 of such title by the carrier or freight forwarder applicable to such transportation service and the negotiate rate for such transportation service if the carrier or freight forwarder is no longer transporting property ... or is transporting property ... for the purpose of avoiding the application of this subsection.

13. In Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, filed December 22, 1993, Republic mentioned section 2(e)(1) of the Negotiated Rates Act, which had recently been enacted. The primary argument asserted by Republic in those proceedings, however, was that the rates sought by Jones were unreasonable.